### W. G. HODGES v. W. E. BRICE ET AL.

Decided May 1, 1903.

**1.—Judgment—Presumptions—Enforcing Lien on Land—Jurisdiction.**

Since the district court has jurisdiction, upon the existence of certain facts, to establish a judgment lien against land in an action by an assignee of the judgment against the heirs of the judgment debtor, and to order a sale of the land, it will be presumed in support of such judgment, in a suit to recover the land by a purchaser at the sale under such order, that the facts necessary to support the jurisdiction were shown in the prior suit.

**2.—Oil Lease of Lands—Validity.**

Where the consideration of an oil lease of lands is the prospecting and developing of the lands with due diligence, and it is to remain in force only so long as the parties comply with their mutual agreements, and no prospecting has been done under it, although it was executed in 1891, such lease is void. Following Emery v. League, 31 Texas Civ. App., 474.

**3.—Same—Parties.**

In an action to enforce a judgment lien against the land the lessees in such void oil lease were not proper or necessary parties, as they had no right of equity of redemption.

Appeal from the District Court of Hardin. Tried below before Hon. L. B. Hightower.

*Oliver S. Kennedy,* for appellant.

*Greer, Greer & Nall,* for appellees.

GARRETT, CHIEF JUSTICE.—This was an action brought by A. G. Hodges against W. E. Brice and others for the recovery of 200 acres of land situated in Hardin County. Plaintiff's title was deraigned from S. E. Parker through a sheriff's sale at which the plaintiff purchased the land, and the defendants claimed the land under an oil lease. The case was tried to the court without a jury, and judgment was rendered in favor of the defendants, that the plaintiff take nothing by his suit, which the court held to be one simply for the cancellation of the lease, but decreed that the defendants should pay to the plaintiff the amount of the judgment under which the sale was made at which he became the purchaser of the land; and it was adjudged that the decree was not intended to devest plaintiff of any title that he might have to the land sued for.

The J. S. Brown Hardware Company recovered a judgment on April 6, 1896, in a justice court of Galveston County against S. E. Parker for $30.98, with interest at 10 per cent per annum, and $3.80 costs of suit. Execution was issued to Galveston County upon this judgment April 17, 1896, which was returned nulla bona. On January 27, 1897, an abstract of said judgment was properly made and certified by the justice of the peace by whom it was rendered, and said abstract was duly filed and recorded and indexed in the judgment record in the office of the county clerk of Hardin County. S. E. Parker died May 21, 1901, and his wife, Jane E. Parker, died February 6, 1902. They left surviving them as their sole heirs three children, to wit, W. H. Parker, W. S. Parker and S. E. Parker, Jr. On September 9, 1901, the J. S. Brown Hardware Company, for a valuable consideration, transferred its judgment against S. E. Parker to E. D. Pope. A suit was brought in the District Court of Hardin County March 20, 1902, by the said E. D. Pope against the said heirs of Parker and his wife to establish and foreclose a judgment lien in his favor against the land in controversy, and on April 9, 1902, the said Pope recovered judgment against the said heirs adjudging that a lien had been created upon the land by the record of the abstract of said judgment, and decreeing that the land should be sold in satisfaction thereof. In pursuance of an order of sale issued upon the judgment the land was sold on July 1, 1902, and was bought by the plaintiff A. G. Hodges, and a deed therefor was executed and delivered to him by the sheriff. None of the defendants were parties to the suit of Pope against Parker's heirs. On April 12, 1901, S. E. Parker, joined by his wife, executed an instrument which purported, for a consideration of $4 paid to them by W. E. Brice, of Mason City, Iowa, and the covenants and agreements thereinafter contained, to grant, bargain, sell and convey to the said Brice, his heirs and assigns, all the oil and gas under the land in controversy, "together with the right to enter upon said premises for the purpose of drilling and operating for oil, gas and water, and to erect, maintain and remove all buildings, structures, fixtures, pipe lines and machinery necessary for the production and transportation of

all oil, gas and water, provided that the second party shall have the right to use said premises for farming purposes, except such parts as is actually occupied by the second party. * * * The above grant is made on the following terms: First. In case second party fails to commence a well upon the said premises within six months from this date, or unless he shall thereafter pay to the first party four dollars per month from month to month until said well is commenced, then this lease shall become null and void. Second. If oil should be found in paying quantities, upon the premises, second party agrees to deliver to the first parties in the pipe line with which it may connect the well or wells, the one-eighth of all the oil produced and saved from the said premises. Third. Should gas be found in paying quantities in any well, consideration in full shall be at the rate of $50, payable quarterly from each well, together with the privilege to said lessor to pipe sufficient gas to such well to heat and light one dwelling house, on said premises, so long as lessee continues to pipe and use said gas from said well, he making his own connections. Fourth. The said party of the second part to have the privilege for excavating for water and for using sufficient water, gas and oil from the premises herein leased to run the necessary engines, for the construction of said business, on this and adjoining premises operated jointly as one property, without charge therefor. Fifth. Second party may at any time remove all its property, and may reconvey to the party of the first part, his heirs and assigns, the premises and estate hereby granted, and thereafter be relieved from further liability from this grant and instrument. Sixth. All moneys that may hereafter become due on this grant to parties of the first part shall be deposited, when due, to the credit of said first parties, in First National Bank of Beaumont, State of Texas, and such deposits shall be accepted by first parties, for such moneys may be due and payable. It is further agreed that the second party, his heirs or assigns, shall have the right at any time to surrender up this lease and be relieved from all moneys due and conditions unfulfilled, then and from that time this lease shall be null and void, and be no longer binding on either party, and the payments which shall have been made shall be held by the parties of the first part as the whole stipulated damages, for the nonfulfillment of the foregoing contract. That all conditions between the parties hereunto shall extend to their heirs, executors and assigns, and it is further agreed that no well shall be drilled within 100 feet of any building now on said premises."

Brice made similar leases to his codefendants. No drilling or mining or operation of any character under said lease was ever commenced on said land.

The District Court of Hardin County had jurisdiction upon the existence of certain facts to establish the lien of the judgment in the case of the J. S. Brown Hardware Company v. S. E. Parker on the land in controversy in favor of Pope, the assignee, in his suit against the heirs of Parker, and to order the sale thereof in satisfaction of the

judgment. Solomon v. Skinner, 82 Texas, 345. It will be presumed in support of the judgment that the facts to support the jurisdiction of the court were shown. The defendants were not parties to the suit to establish and foreclose the lien on the land, but they had no such title thereto as made them necessary parties in order to shut off any right to redeem. The lease was void. Emery v. League, 31 Texas Civ. App., 474, 6 Texas Ct. Rep., 719. But at most it was a mere option for a lease, which was concluded by the foreclosure. In an ordinary lease made subsequent to the mortgage the mortgagee, after foreclosure, may treat the lessee as a trespasser and eject him. 1 Jones on Mort., 777; Boone on Mort., 116-121. So, under any aspect of the question, the defendants acquired no equity of redemption by their lease. The District Court had power to render the judgment and to decree the sale of land, and the defendants, being without any right of equity of redemption, were not proper or necessary parties to the suit, and such being the case, the plaintiff acquired the title to the land at the foreclosure sale free of any lease or option in favor of the defendant, and were entitled to recover. The judgment of the court below will be reversed, and judgment will be here rendered in favor of the plaintiff against the defendants for the cancellation of the leases set out in the petition and the recovery of the land sued for.

*Reversed and rendered.*