GREAT WESTERN OIL COMPANY v. FRANK H. CARPENTER ET AL.

Decided May 15, 1906.

**1.—Contract—One Dollar Consideration.**

The payment of one dollar as a consideration for the execution of a contract is a mere nominal consideration and is not of itself sufficient to support the contract.

**2.—Unilateral Contract.**

A contract which is unilateral and which places no obligation on one of the parties thereto is without consideration and not enforceable.

**3.—Lease Contract, Valid.**

A contract which binds the lessee unconditionally, and not at his option, to do specified work within a specified time upon the leased premises, is not unilateral or unenforceable for want of a consideration. The fact that the lessee can not be compelled to do the specific work agreed to be done by him, and that the remedy by suit for damages would prove inadequate, is immaterial. The lessor can not complain of a contract which he deliberately entered into.

**4.—Same—Cases Distinguished.**

A contract of lease which imposed upon the lessee an unconditional obligation to sink one or more wells on the leased lands within eighteen months and to commence work on the first well within six months from date of contract, and which allows the lessee no option in the matter, is valid and enforceable; and the fact that the lessor reserves the right to terminate the lease upon default on the part of lessee, does not render it otherwise. The cases of Hodges v. Brice, 74 S. W. Rep., 590; Emery v. League, 72 S. W. Rep., 606; Roberts v. McFaddin, 74 S. W. Rep., 105; National Oil Co. v. Teel, 95 Texas, 586, discussed and distinguished.

**5.—Same—Sufficient Consideration.**

A release by the lessee of a part of the land embraced in the first contract is a sufficient consideration to support a second contract based upon and growing out of the first; and a release of all rights under the second contract was a sufficient consideration to support a third contract to convey a part of the leased land and pay a certain sum of money.

**6.—Same—Same.**

Agreements made in good faith in compromise of claims, even though of doubtful validity, should be enforced.

**7.—Money Demand—When Due—Contingency.**

Where in the settlement of business transactions the defendant placed in plaintiff's hands a certain tract of land to be sold by him, and agreed to pay plaintiff a certain sum of money out of the proceeds of the sale of said land, such sum is not due until the land is sold.

Appeal from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Clay S. Briggs* and *S. S. Hanscom,* for appellant.—The court erred in its conclusions of law in holding that the contracts of lease of January and July, 1901, were both unilateral, putting no obligation on the plaintiff to do anything. National Oil & Pipe Line Co. v. Teel, 95 Texas, 586; Emery v. League, 31 Texas Civ. App., 474; Roberts & Corley v. McFadden, 32 Texas Civ. App., 47; 4 Amer. & Eng. Ency. of Law (2d ed.), p. 49, par. 8.

The court erred in its conclusions of law in holding that the leases of January 28, 1901, could not be made the basis for the lease of July 20, 1901, because said conclusion was contrary to the law and evidence, for the reason that it appears from the said lease of July 20, 1901, and from the recitals therein and other uncontradicted evidence that a good and valuable consideration was given by plaintiff to defendants for the execution of said lease of July 20, 1901, to wit: the payment of one dollar and the release of twenty-five acres out of the 145 acres embraced in one of said leases of January 28, 1901, before the expiration of said lease, and that at the time of the execution of said lease of July 20, 1901, the said leases of January 28, 1901, were valid and binding agreements on defendants, and each of them, as options, if not as leases, and constituted a consideration good and valuable in law for said lease of July 20, 1901. National Oil & Pipe Line Co. v. Teel, 95 Texas, 586, 591; Emery v. League, 31 Texas Civ. App., 474; Roberts & Corley v. McFadden, 32 Texas Civ. App., 47; Davis v. Wells, 104 U. S., 159; 21 Amer. & Eng. Ency. of Law, (2d ed.), 927, par. 3; Ibid., vol. 6 (2d ed.), pp. 678, 703, 722, 723, with notes; Sanborn v. French, 22 N. H., 246; Bishop on Contracts (ed. 1887), secs. 68, 1344 and 1439.

*A. L. Davis,* for appellees.—The court did not err in his conclusion of law that the leases sued on by plaintiff were unilateral, and placed no obligation on plaintiff, and that plaintiff having never in fact done anything under said leases, they were nonenforceable, and not binding on defendants. Hodges v. Brice et al., 74 S. W. Rep., 590; Roberts et al. v. McFadden et al., 32 Texas Civ. App., 47; Emery v. League, 31 Texas Civ. App., 474; National Oil, etc., Co. v. Teel, 67 S. W. Rep., 546; National Oil, etc., Co. v. Teel, 95 Texas, 586; Foster et al. v. Elk Fork Oil & Gas Co., 32 C. C. A., 560; Petroleum Co. v. Coal, Coke Mfg. Co. (Tenn.), 18 S. W. Rep., 66; Bishop on Contracts, sec. 78, pp. 32, 33; 7 Am. & Eng. Ency. of Law, (2d ed.), 114; Chitty on Contracts, p. 297; Thornton on Law Relating to Oil and Gas, sec. 66.

Forbearance to insist upon a claim that is not enforceable or the sur-

render of such claim can not be a consideration for a new promise or contract. Steger v. Hume, 79 S. W. Rep., 21; Beland v. Anheuser-Busch Brewing Assn. (Mo.), 58 S. W. Rep., 1; Parsons on Contracts, p. 176; Clarke on Contracts (9th ed.), p. 474—bottom paging.

REESE, ASSOCIATE JUSTICE.—This suit was instituted by the Great Western Oil Company against F. H. Carpenter and his wife, M. A. Carpenter, for the recovery of $1,000 in money, and also for the recovery of a certain tract of 2.82 acres of land. Plaintiff prayed in the alternative that if it was held not to be entitled to recover the money and land, that it be reinstated in its rights under a certain oil lease which had been cancelled by agreement of the parties in consideration of the promise of defendants to pay the money and convey the tract of land sued for.

Upon trial without a jury there was a judgment for defendants from which plaintiff appeals.

The material facts are as follows: On January 28, 1901, defendants and one W. N. Fritter executed two certain contracts or agreements substantially identical in their terms, except as to the land covered thereby, one contract embracing 400 acres of land in Jefferson County, and the other 145 acres in Hardin County. By the terms of the contracts, in consideration of one dollar recited as having been received by defendants, and the covenants on the part of Fritter therein contained, defendants leased to Fritter for the term of ten years, unless sooner terminated under the terms of the contract, the aforesaid tracts of land "for the purpose of boring, mining and operating for oil, gas, coal and other minerals on said land." The contracts contained the usual stipulations for the exclusive right of Fritter to mine and bore for oil, gas, coal and other minerals, and for the delivery to the lessors of a specific proportion of the product of such operations, if successful, with power in the lessee to transfer or sublease, and, at his option, to renew the lease for ten years or so long as the land produces oil, gas, coal or other minerals, if any ever found.

Each of these lease contracts contain the following clause:

"The party of the second part hereby agrees to sink one or more wells on said land within 18 months from date hereof, work on the first one of which shall be commenced within six months from the date hereof. In the event of failure to so commence work on said well within six months from date hereof, the parties of the first part may, at their option, cancel this lease, unless the same be renewed for one year by the party of the second part by the payment of the annual rental of ten cents per acre."

Both of those contracts were afterwards assigned by Fritter to the Great Western Oil Company, appellant herein, who became thereby vested with all of the rights and bound by all of the obligations of Fritter.

On July 20, 1901, which was eight days before the expiration of the six months within which the lessee was to commence work on the wells to be bored under the contract under the clause therein, above quoted, appellant and appellees entered into a new agreement or contract whereby in consideration of one dollar acknowledged to have been received by appellees and the further consideration of the stipulations of the contract, appellees granted and sold to appellant for a continuous period of

fifty years with privilege of renewal for an equal term "all of the oil, gas, coal and other minerals under and upon the 400 acre tract covered by one of the first leases aforesaid and 120 acres of the 145 acres covered by the other of said leases, with the usual provisions for right of ingress and egress and occupancy for drilling, mining and operating for oil, coal, gas and other minerals, the erection of machinery, laying pipe lines, etc., and stipulations for the payment to appellees of a certain proportion of the output of such operations.

In consideration of the execution of this contract appellant released all of the land covered by the two leases executed to Fritter and assigned to appellant from said leases, and expressly released therefrom the 25 acres embraced in said lease of 145 acres and not embraced in the last contract.

This contract contained the following clause; "In the event work on a well sinking pipe either for oil or gas is not begun within nine (9) months from date hereof and completed within fifteen months thereafter on each of said two tracts of land and not abandoned until pipe is down at least 800 feet, unless oil is found at a less depth, then this grant and lease shall become null and void as to both parties of the first and second parts hereto."

On March 24, 1902, the parties entered into another contract which is as follows:

"The agreement this day made between F. H. Carpenter and R. L. Heflin for himself and the Great Western Oil Company is as follows:

"In consideration of the cancellation by the Great Western Oil Company of its lease on section 34 of the T. & N. O. R. R. Co. survey in Jefferson County, Texas, and on 120 acres, more or less, in the Jackson league in Hardin County, Texas, which two tracts of land are more fully described in an instrument of writing between said Carpenter and the Great Western Oil Company, dated the 20th day of July, 1901, the said Carpenter agrees to pay to the Great Western Oil Company the sum of $1,000 out of the first money realized from the sale of 50 acres of said land, and further agrees to deed lot No. 1 to said company or its assigns. Said lot being situated in the northeast corner of said 120 acre tract and measuring 301 feet from east to west by 409 1-3 feet from north to south, and agrees to place the balance of said 120 acre tract in the hands of A. E. Bush and R. L. Heflin for sale for his, Carpenter's, account, at such price per lot or per acre as he, the said Carpenter, may from time to time designate, paying them five percent commission on sales as made.

"The $1,000 is to be paid out of the proceeds of the sale of the first fifty acres of said land sold, that is, each of the fifty acres that is sold is to bear its fiftieth of the $1,000.

"Said Carpenter reserves the right to withdraw said land from sale at any time after ninety days from date hereof and reserves the right to retain the ownership of any one to five lots of said land."

This instrument was signed by the Great Western Oil Company and by F. H. Carpenter, but not by M. A. Carpenter, his wife, who signed all of the other contracts hereinbefore referred to. The omission of Mrs. Carpenter to sign, however, is not material.

On March 26, 1902, appellant executed to appellee F. H. Carpenter an express release of all of its right, title, claim or interest by virtue of the instrument of July 20, 1901.

At the date of the contract of March 24, 1902, there remained 26 days of the nine months within which, under the terms of the contract of July 20, 1901, work on a well had to be begun on each of the two tracts of land embraced therein, in default of which the contract was to become void as to both parties.

The trial court found, upon sufficient evidence, that no part of the 50 acres of land referred to in the last contract had ever been sold, and that therefore the basis for the payment of the $1,000 had never been created.

No work was ever, in fact, done by either Fritter or appellant towards boring or mining for oil, gas, coal or other minerals under any of the contracts.

The one dollar in cash, recited to have been paid to appellees, as a consideration for each of the two leases of January 28, 1901, and the lease of July 20, 1901, was in fact so paid as recited.

This suit was brought to recover the tract of 2.82 acres of land and the $1,000 referred to in the contract of March 24, 1902.

The trial court denied the right of recovery by appellant on the ground that the contracts of lease were unilateral contracts and without consideration, and therefore not binding upon appellees and that the release and cancellation thereof furnished no consideration for the contract of March 24, 1902, for the conveyance of the land, and the payment of the money which is the basis of this suit. The court further concluded that as to the $1,000 the condition upon which it was to be paid had not been complied with, in the sale of the 50 acres of land.

It is necessary to determine the nature of the first contracts between appellees and W. N. Fritter of January 28, 1901, which forms the basis of the subsequent agreements. The release of the 25 acres of the 145 acre tract embraced in that lease was one of the considerations for the execution of the contract of July 20, 1901. If therefore that lease was a valid lease and supported by a sufficient consideration the release of the 25 acres therefrom furnished a sufficient consideration for the contract, which was in fact an option, of July 20. Again if this last contract was supported by a sufficient consideration the cancellation thereof furnished a sufficient consideration for appellees' contract to convey the 2.82 acres and to pay the $1,000 sued for.

On the other hand, and for like reasons, if the first two leases of January 28, 1901, were, as found by the trial court, unilateral contracts and not enforceable for want of consideration, then not only those contracts, but both of those subsequent thereto, resting upon the first two, were without consideration and appellant is not entitled to recover.

The consideration of $1.00 recited as paid, and in fact paid, was merely nominal, and if the contracts were not supported by any other consideration we would have no hesitation in agreeing with the trial court. (Guffey Petroleum Company v. Oliver, 79 S. W. Rep., 891; Federal Oil Co. v. Western Oil Co., 112 Fed. Rep., 376.) This was the case with other contracts, oil leases, or options to mine for and take oil, gas and other

minerals, which have been before the courts of this State and which have been held to be void or unenforceable for want of mutuality or for lack of valuable consideration to support the same.

We have carefully examined all of the cases cited by appellees in their brief, in support of the trial court's conclusion of law that the leases of January 28, 1901, were unilateral and placed no obligation on plaintiff, and were therefore without consideration and nonenforceable, and find that the contracts therein discussed were all different from the first lease contracts in this case, in the essential particular that the latter do impose upon the lessee an unconditional obligation to sink one or more wells on the leased lands within eighteen months and to commence work on the first well within six months from the date of the contract. No option is given the lessee to do this work or not, or to let the lease lapse, on account of his failure if he so elects. In case of failure of the lessee to commence work on the first well within six months the option is given the lessors to cancel the lease, but unless the lessors choose to exercise this right of forfeiture or cancellation the lessee can be held, at all events, to a compliance with his obligation to do the work specified in the contract and expressly agreed to be performed by him. It is true that if the lessors elect to cancel the lease for default on the part of the lessees the lessees may prevent such cancellation and continue the lease in force for another year by paying to the lessors ten cents per acre per annum as rental, but that in no way affects the right of the lessors to demand at all events, a compliance on the part of the lessee with his express obligations under the contract to do the work specified.

This right in the lessee to continue the lease for one year on payment of the annual rental provided, only becomes effective in the event the lessors elect to exercise their option to cancel for failure to do the work specified in the contract. The result of such failure is not to put an end to the contract unless the lessors elect to have it so.

In the case of Hodge v. Brice (74 S. W. Rep., 590) the lease or option under discussion provided that if the lessee "fails to commence a well upon said premises within six months or unless he shall thereafter pay to the first party (the lessors) four dollars per month from month to month until the well is commenced this lease shall be null and void." It was optional with the lessee to either commence the well or to pay the four dollars per month, or to do neither, in which case the lease became null and void. The lease or option as declared by this court was held to be void, citing Emery v. League, 31 Texas Civ. App., 474. In the cited case which was decided by this court, the lease or option was of an undivided interest of 14 acres of land and the lessee undertook and obligated himself to have the land partitioned and to begin operations in good faith within six months after the final division of the land and to have six months thereafter within which to prospect the land and complete a well. It was held that the contract bound the lessee to have the land partitioned within a reasonable time, as otherwise there would be no time limit to the option granted him to prospect and develop the land, in which case the contract would be void for want of mutuality. The court says: "The primary purpose of the contract being the development of the land, if the lessee was not bound to proceed with such de-

velopment the lessor would not be bound to proceed with his part of the contract.  No development could be made until the land was partitioned."  The lessee not having complied with his contract to proceed to have the land partitioned within a reasonable time, it was held that he had forfeited his rights under the contract.  The inference to be drawn from the opinion is that the contract would have been upheld if the lessee had complied with his agreement, which furnished a sufficient consideration for the contract.  Applying the rule therein laid down to the facts of the present case, it would seem clear that the leases of January 28, 1901, were valid and the lessee entitled to all of the benefits of the grant unless and until forfeited, at the option of the lessor, for failure to begin operations within the six months, and complete a well on each tract within eighteen months as agreed.

In the case of Roberts v. McFadden (74 S. W. Rep., 105) the lease contract in question provided that the lessee might terminate it at any time, in which case the sum paid to the lessor should be his full compensation for any injury sustained.  No sum had in fact been paid and the lessee not being bound to do or perform anything the contract was held to be unilateral and void.

To the same effect was the contract considered and pronounced void in the case of National Oil Co. v. Teel (67 S. W. Rep., 545) the decision of the question resting upon the fact that the contract did not bind the lessee to do anything.

We have not been able to find a case in which it has been held that a contract which binds the lessee, as the contracts of January 28 in the present case do, unconditionally, and not at his own option, to do specified work under a specified time upon the leased premises has been held to be a unilateral contract and unenforceable for want of consideration. (Springer v. National Gas Co., 145 Pa., 430; Foster v. Elk Fork Oil & Gas. Co., 90 Fed. Rep., 178; Donahue on Petroleum & Gas, 156, et seq.)

It is no answer to what has been said that the lessee in the present case can not be compelled specifically to do the work agreed to be done by him, and that the remedy by way of a suit for damages for failure on his part must prove inadequate if not utterly futile for the reason that there are no means by which his damages can be measured.  Appellees can not be heard to complain of these contracts, deliberately and understandingly entered into, on the ground that the obligations which they have exacted of appellant as a consideration for their own contract is of such a nature that it is difficult, if not impossible to determine the amount of their damages, in case of a violation of this agreement by appellant.

We conclude that the lease contracts of January 28, 1901, were valid contracts and were in full force, binding the land embraced therein, on July 20, 1901, when the second contract was executed.  The release of the 25 acres of land out of the tract of 145 acres furnished a valuable consideration for the option contained in this last contract, which option would have continued until and unless forfeited, by its terms, for failure on the part of appellant to begin work in nine months and finish a well on each of the two tracts in fifteen months from the date of the contract.  Until these contingencies occurred the land was bound by the

option contained in this contract. This contract imposed no express obligation on appellant to do any work, as a consideration of the option, but the release of the 25 acres from the former leases was sufficient consideration to support it.

A release of both tracts of land from this option was a sufficient consideration for the contract to convey the 2.82 acres of land and the payment of the $1,000 sued for herein.

This conclusion finds further support, if need be, in the principle that agreements made in good faith in compromise of doubtful claims, are to be enforced notwithstanding the claim asserted on the one side is denied on the other, and may appear to be invalid or unenforceable. (1 Pars. on Contracts, 438.)

We think that no importance is to be attached to the fact that appellant never took any steps to bore for oil on the land, or that it had no machinery for the purpose. It was not necessary that it should have such machinery on hand. It is not suggested that it could not, or that it would not, have begun operations under the first leases in time to save them from forfeiture. Rather than wait the eight days remaining to determine whether appellant could or would do the work required, appellees preferred to cancel the first leases, clearing the 25 acres, and executing the new contract as to the balance of the land, of July 20. Rather than wait the 26 days required to determine whether appellant could or would do the work required to be done to save the latter contract from forfeiture, appellee F. H. Carpenter preferred to take no chances but to give the 2.82 acres of land and promise to pay the $1,000 in manner provided, in order to get an immediate release of all of the lands from appellant's claim.

The judgment of the trial court does not rest upon any fraudulent misrepresentation on the part of appellant inducing the execution of any of the agreements by appellees. The evidence does not authorize such conclusion. The court found upon sufficient evidence that no part of the 50 acres of land had ever been sold, that appellee had fixed the price upon it as required by the contract, but that neither appellant nor its agent had ever sold any part of it. The $1,000 was to be paid out of the proceeds of this 50 acres when sold. It is not shown to be due and appellant's demand therefor in this suit can not be sustained.

The judgment of the trial court is reversed as to the 2.82 acres of land described in the contract of March 24, 1902, and judgment here rendered in favor of appellant therefor.

As to the claim for $1,000 the judgment is affirmed without prejudice to the right of appellant to sue for and recover the same whenever it may appear that it can be legally demanded under the terms of said contract.

*Reversed and rendered in part.*
*Affirmed in part.*

Writ of error refused.