WITHERSPOON et al. v. STALEY et al.

(Court of Civil Appeals of Texas. Austin. March 12, 1913. Rehearing Denied April 16, 1913.)

1. MINES AND MINERALS (§§ 53, 58*)—OIL AND GAS LEASE—UNILATERAL CONTRACT — MUTUALITY—OPTION.

The owner of certain oil land executed a written instrument by which, for $25 and certain royalties, he granted, etc., to S. all the oil, gas, and other minerals under the land, to hold for five years from the date of the instrument, and so long thereafter as oil, gas, and other minerals were found in paying quantities, provided if operations were not commenced with diligence within 60 days from October 30, 1910, the grant should immediately become void, except that S. might prevent such forfeiture from year to year by paying $25 every 60 days until the oil well was commenced, or until shipments from the mines had begun; that the grant was not intended as a mere franchise, but as a conveyance of the property described for the purposes mentioned. *Held* that, since the instrument did not bind S. to do anything, it was a mere unilateral contract, constituting nothing *more than an option*, which terminated on the failure of S. to perform the conditions.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 147, 148, 168, 169; Dec. Dig. §§ 53, 58.*]

2. MINES AND MINERALS (§ 79*)—OIL AND GAS LEASE — FORFEITURE — PAYMENTS — RECEIPT.

Where the time within which an option to continue an oil and gas lease could be exercised by the payment of $25 to the landowner expired January 28, 1911, a deposit of such sum in a bank to the credit of the landowner on January 30th was ineffective to continue the lease, though a receipt for the previous payment, not in accordance with the terms of the lease, improperly recited that it continued the lease to January 30, 1911; and the landowner having refused to accept the credit the option was terminated.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 209; Dec. Dig. § 79.*]

3. MINES AND MINERALS (§ 79*)—OIL AND GAS LEASE — FORFEITURE — PAYMENT — ESTOPPEL.

Where an oil and gas lease could have been continued, by its terms, by a payment of $25 to the lessor on January 28, 1911, but the amount was not deposited to the landowner's credit in a bank until January 30th, and, though the landowner did not at once repudiate it, the lessee did nothing, except, on January 30, 1911, to haul pipe to the land, where it still remained, and on February 3d written notice was given the lessee of the landowner's refusal to accept the payment, and declaring the contract forfeited, the landowner was not estopped by his delay to enforce such forfeiture.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 209; Dec. Dig. § 79.*]

Appeal from District Court, Navarro County; H. B. Daviss, Judge.

Action by C. L. Witherspoon and others against W. H. Staley and others. Judgment for defendants, and complainants appeal. Reversed, with instructions to render judgment in favor of complainants.

See, also, 138 S. W. 1191.

W. J. McKie and Callicutt & Call, all of Corsicana, for appellants. Richard Mays, of Corsicana, for appellees.

RICE, J. This suit involves a contest between two rival claimants for the right to prospect for and develop oil, gas, coal, or other minerals underlying a tract of 245 acres of land out of the McNeal survey in Navarro county, basing their respective claims thereto upon certain contracts between themselves and the owners thereof. It was alleged by appellant Witherspoon that on the 30th of October, 1910, Dr. Frank Hines, the owner of said land, leased to W. H. Staley, one of the appellees herein, the mineral rights thereunder, said contract reciting that said Hines, in consideration of $25 cash to him paid by said Staley, and certain other consideration thereinafter set forth to be performed by said Staley (among which were the delivery and payment to said Hines of one-eighth of the oil produced and four cents per ton for all coal mined and marketed, as well as the payment of $100 per year for the product of each gas well), granted, bargained, sold, and conveyed to said Staley, or his heirs and assigns, all the oil, gas, coal, and other minerals under said land, to have and to hold the same to said Staley, his heirs or assigns, for the term of five years from the date thereof, and as long thereafter as oil, gas, and other minerals were found in paying quantities therein, provided, in case operations for either the drilling of a well for oil, gas, mining, or other minerals was not commenced and prosecuted with due diligence within 60 days from date thereof, then said grant should immediately become null and void as to both parties; also providing that said Staley may prevent such forfeiture from year to year *by paying to said Hines the sum of $25 every 60 days until such well is commenced,* or until shipments from such mines have begun, which payments could be made at the First National Bank of Corsicana, Tex., or payable directly to said Hines. Said contract further provided as follows: "This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purposes herein mentioned, and it is so understood by both parties to this agreement." There were other provisions not deemed important, for which reason they are not recited; but the entire contract is set out and may be found in the case of Witherspoon v. Staley, 138 S. W. 1191.

It was further alleged that said Staley did not commence operations thereunder within 60 days, but that on the 30th of November, 1910, he paid to said Hines $25,

which· was · accepted by him, whereby the time for development was extended until the 27th or 28th of January, 1911, but that no development or further payment was made ·by said · Staley within such period; whereupon said Hines, on the 3d of February, 1911, declared said contract forfeited and forbade Staley's entrance upon said land for the purpose of prospecting for or developing oil, gas, or other minerals thereon; and on the same day said Hines and wife made a somewhat similar contract with said appellant, conveying such mineral rights under said land to him, and at the same time notifying Staley of what he had done, and likewise informing him that, in the event he should undertake to enter upon said land for the purpose of developing the same, he would claim as his own the entire fruits of his efforts, and further alleging that, notwithstanding such action upon the part of said Hines, said Staley, disregarding his (Witherspoon's) rights, proceeded to sink a well upon said land for the purpose of procuring oil, and would, if not restrained, succeed in so doing, and in draining the oil under an adjacent tract upon which appellant likewise had a lease and was operating a well, to his great damage. He further alleged that, notwithstanding it was the duty of said Hines to have prevented any attempted development of said land for oil or other minerals by said Staley, he had failed to do so, praying that a writ of injunction should issue against said Staley, preventing him from further prosecuting operations on said land under and by virtue of his alleged contract, and for a cancellation thereof, and praying the establishment of his own contract with Hines and wife, hereinbefore referred to.

Said Staley and one T. N. Barnsdall, who, it seems, was interested in the Staley contract, jointly answered, urging certain special exceptions, a general denial, and specially answered, asserting that their contract had not in fact expired, because the required payments had been made and work begun within due time; wherefore their contract was superior to that of appellant Witherspoon, and should prevail.

Hines and wife, who were made parties defendant, likewise answered, setting up substantially the same facts as those relied upon by appellant Witherspoon, and prayed for similar relief. .

There was a jury trial, resulting in a verdict and judgment for appellees, from which this appeal is prosecuted.

[1] Many interesting questions have been raised and ably discussed by counsel on both sides in their briefs, most of which, however, it will not be necessary· for us to notice, for the reason that we have concluded that the trial court erred in not peremptorily instructing a verdict in behalf of appellants, on the ground that the contract relied upon by appellees did not convey any interest in the land, but conveyed merely an

optional right to acquire an interest therein upon the performance of certain conditions, which were not complied with within the time stipulated for their performance.

This contract was likewise a unilateral one, in that it did not bind or obligate the lessee to perform any of the conditions thereof, and was therefore lacking in mutuality. See Natl. Oil & Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 979; s. c., 67 S. W. 545; Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 109; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 111; Hodges v. Brice, 32 Tex. Civ. App. 358, 74 S. W. 590; Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955; Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320; Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107. See, also, Eclipse Oil Co. v. South Penn. Oil Co., 47 W. Va. 84, 34 S. E. 923; Harness v. Oil Co., 4 W. Va. 232, 38 S. E. 670; Cowan v. Iron Co., 83 Va. 547, 3 S. E. 120. ·

Bouvier (volume 2, p. 621) defines a unilateral contract as follows: "When the party to whom the engagement is made makes no express agreement upon his part, the contract is called unilateral, even in cases where the law attaches certain obligations to his acceptance."

Mr. Justice Gaines, in National Oil Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 980, held, in a case involving contracts very similar to the one in question, that the same were unilateral, and said that, "viewing the same in the light most favorable to the grantees, they did not pass any interest in the lands, but were mere contracts for an option by which they might acquire such an interest," saying that ·a naked agreement by which one promises to convey to another an interest in land, in consideration of money to be paid or acts to be performed by such other, but which does not bind the other to pay or perform the consideration, as the case may be, cannot be enforced. In such case there is a want of mutuality in the agreement; the one party promises to do something; the other does not promise absolutely to do anything; hence there is no consideration to support a contract, and it is void.

In the case of Huggins v. Daley, supra, it was held, as shown by the syllabus, under a contract somewhat similar to the one under consideration, that the boring of a well within 90 days was a condition precedent to the continuance of an oil and gas lease, which, in consideration of $1, granted all the oil and gas in certain lands, with the privilege of operating therefor, for a period of 5 years, and as much longer as oil or gas is found in paying quantities, not exceeding 35 years from date, with a royalty of one-seventh part or share of the oil produced and saved, but with a proviso that a well shall be completed within 90 days, in default of which the lessee shall pay a forfeiture of 50 cents. The only substantial consideration consists of the prospective royalties. It is

further stated in said case that a lease of this character is not a grant of property in the oil or in the land, but merely a grant of possession for the purpose of searching for and procuring oil. The title is inchoate, and for the purpose of exploration only, and until the oil is found. If it is not found, no estate vests in the lessee. The only consideration which moved the lessor to grant a lease was the prospective royalties from oil and gas, which could come only if the lessee complied with the terms of his contract to bore a well; for, while the sum of $1 is technically valuable, it is only a nominal consideration. Where, under a lease contract, the lessee agrees to start a well in a certain period of time, it was held that the well was not commenced until the actual boring in the ground was commenced; and in said case, although the lessee began hauling lumber to and on the premises before the time expired, the lease was forfeited. See Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 109, and cases there cited.

In Hodges v. Brice, supra, it was held that, where it appeared on the face of the contract that the real consideration was the development of the property, and that the contract was only to remain in force as long as the parties complied with their mutual agreement, and no prospecting having been done within a year, the lease was void; the same being a mere option.

In the case of Steelsmith v. Gartlan, supra, it was said that, a lease for oil purposes, providing certain royalties, with a stipulation that a well should be completed within one year, the failure to do so rendered the lease null and void, unless the lessee should pay 25 cents per acre from and after the date stipulated for the completion of the well when such payment should operate to extend the time for five years. No well was drilled, and the lessor, considering the lease forfeited, refused to accept the rent therefor. The court further said: "The lessee cannot be compelled to put down another well; and, he not being bound, the lessor was not bound either. The only consideration left to the lessor was the prospective oil royalties and gas rentals, which the lessee was in position to entirely defeat. Contracts unperformed, optional as to one of the parties, are optional as to both. * * * Such leases are construed most strictly against the lessee and favorably to the lessor, * * * and the demise for the purpose of operating for oil and gas for the period of five years is dependent upon the discovery of oil and gas in the search provided for."

"Such leases vest no present title in the lessee; and if at any time the lessee has the option to suspend operation the lease is no longer binding upon the lessor, because of want of mutuality. A lease should not be construed so as to enable the lessee to hold it merely for speculative purposes, without doing what he stipulated to do and what was clearly in the contemplation of the lessor when he entered into the agreement. The trend of decisions has been almost uniformly in favor of the lessor. Generally," says the court, "it is the lessee who is favored, and after a substantial compliance with the terms of the contract equity will not regard a technical breach. But with mineral leases it is otherwise. This is due to the nature of the business of mining, and especially of oil mining, and to the temptation offered a shrewd operator to purchase at a nominal price the right to develop lands, the owner of which is ignorant of their real value, and to hold to them indefinitely, neither working them himself, nor permitting another to do so."

But it is contended on the part of appellee that the contract in the instant case materially differs from the one under consideration in National Oil & Pipe Line Co. v. Teel, 67 S. W. 545, in two particulars, to wit: In that case there was no limitation to the termination of the contract, whereas, in the present case, it is limited to a period of five years, and that in that case there was no such provision as there is in the present, declaring that "this grant is not intended as a mere franchise, but is intended as a conveyance of the property above described, for the purposes herein mentioned, and it is so understood by both parties to this agreement," and that therefore this case can and should be, for these reasons, distinguished from that. It is true that in that case Mr. Chief Justice James does call attention to the fact that under that contract there was no limitation to the time when the grantee might perform, but as to this it was left optional with him when the performance, if ever, should take place, and seems to intimate that for this reason said contract should be held void. And appellee likewise insists that, since the parties have declared that the instrument in the present case was not intended as a franchise, but as a conveyance, this should have controlling effect in interpreting said contract. We are unable to agree with appellees in either of these contentions. We think it is immaterial that there was a limitation of five years, and cannot see how this could in any sense affect the principle involved, because, at last, the controlling question seems to be whether, under such contracts, first, the grantee is bound at all to do anything, and, if he is, must he perform within the period prescribed? Or, in other words, does it appear from the whole instrument that it was intended merely to convey an option, in contradistinction to the title to the minerals? And where it clearly appears, as it does here, and in the numerous contracts construed by the courts whose decisions we have cited, that the chief and principal consideration moving

the grantor to make the contract was the development of the minerals underlying his land, and not the mere receipt of the nominal consideration, then the courts hold that the instrument was not intended to convey an interest in the estate, but only an option.

Nor do we think that the mere stipulation that the instrument in the present case was not intended as a franchise, but as a conveyance of the property, should affect the question, because we must look to the entire instrument to determine its meaning; and when this is done it is apparent that this declaration should not alter or change its legal effect. Besides, it is stated therein that it shall be intended as a conveyance of the property "for the purposes herein mentioned," and the purposes therein mentioned clearly indicate that the chief consideration on the part of the grantor in making the instrument was the development of the minerals underlying the land upon certain conditions, declaring a forfeiture if such conditions were not complied with. But if this last clause could have the effect contended for it would result in rendering the instrument ambiguous, and therefore not enforceable.

It will be noted in the present case that the contract declared that, "in case operations for either the drilling of a well for oil, gas, mining, or other minerals is not commenced and prosecuted with due diligence within 60 days from this date, then this grant shall immediately become null and void as to both parties; provided that second party [Staley] may prevent such forfeiture from year to year by paying to the first party [Hines] the sum of $25 every 60 days until such well is commenced, or until shipments from such mines have begun," etc. Under such provision Staley was not required to pay $25 within 60 days from September 30, 1910, nor was he obligated to do anything thereunder, for the reason that he had not so bound himself. This being true, no obligation rested upon Hines thereunder, unless Staley either commenced operations or prevented a forfeiture by the payment of $25 within the prescribed period, the same being accepted by Hines; and having failed to do either Hines had the right to declare the contract forfeited and enter into another with Witherspoon, as he and his wife saw proper to do.

[2] But it is contended on the part of appellees that no such forfeiture had occurred, for the reason that he had not only tendered the money to Hines within the prescribed period of time, but had also commenced operations as contemplated by said contract. We differ with appellee in this contention, and think that the uncontroverted evidence shows the contrary. There is no question but that no work whatever was commenced within the first 60 days after the execution of the contract, nor is it claimed that there

was; but appellees insist that because the second payment was made on the 30th of November, 1910, of $25, which was received by appellant Hines, and a receipt executed by him therefor, reading as follows:

"Rental Receipt.

"Nov. 30, 1910.

"Received of W. H. Staley $25.00, twenty-five and —— 100 dollars, being in full for the two months rental on my land of 245 acres, more or less, in Jno. McNeal survey, Navarro Co., Texas, from Nov. 30th, 1910, to Jany. 30, 1911. In accordance with the terms of lease to W. H. Staley, dated September 30, 1910.     F. Hines."

—the time within which to commence operations was extended until the 30th of January, 1911, on which day he deposited in the First National Bank of Corsicana, to the credit of Hines, the sum of $25, informing Hines thereof; and thereafter, on the same day, commenced operations by hauling a load of pipe upon the land, whereby his right had become vested under said contract.

We think the payment and acceptance of said $25 on the 30th of November, as above stated, had the effect of keeping the contract in life for another period of 60 days, but not, we think, as claimed by appellee, until the 30th of January, but until the 28th of January only. It is true the receipt given by Hines for said payment did undertake to so extend the time; but it is clear that it should not have such effect, for the reason that it is shown from the receipt itself that this recital could not operate so as to change the original contract, because it is recited therein that said receipt was given in accordance with the terms of such lease to Staley (which, it appears, that the parties did not have before them at the time). Besides, no consideration whatever is alleged or proven to have been given for such extra extension of time, and without which no such right, we think, could be asserted. There is no pretense that the third payment was made to the bank until the 30th of January, 1911. Unless the receipt had the effect of extending the time, then this payment was too late, and appellant Hines upon said date was not bound to accept the same. He declined to receive this payment, when notified by appellee that it had been deposited in the bank to his credit, and thereafter notified both the bank and appellee Staley of this fact, instructing the bank to take it out of his account and place it back to the credit of Staley, and Staley afterwards received this money himself from the bank.

[3] There can be no estoppel against appellants, as asserted by appellees, for the reason, we think, that no act or conduct on the part of appellant Hines is shown that could have this effect. It is true that, when first informed that this money was left at

the bank for him, he did not at once repudiate it. He merely said nothing, according to the evidence of appellees; but this attempted payment on the 30th of January by deposit in the bank for his account came after the expiration of the time in which the contract permitted that it might be paid. Hence, in order to bind appellant Hines, he must either have received this money, or by some word or conduct of his must have induced appellee to have acted in his behalf to his injury or detriment, which is not shown. In fact, nothing was done by Staley between the 30th of January and the 3d of February, when written notice was given him by Hines of his refusal to accept said payment and declaring said contract forfeited, except the hauling, on the 30th of January, of one load of pipe to the land, and it is not shown whether this took place before or after Hines was informed of the deposit of the $25, and which said pipe was still on the land at the time of this trial. Besides this, if the evidence had shown such facts as constituted an estoppel on the part of appellant Hines, it could not have affected or changed the result, for the reason that appellees have pleaded no estoppel whatever as against him, and therefore could assert none.

Believing that appellee's contract with Hines, for the reasons above stated, had become null and void prior to the deposit by appellee of the $25 in the First National Bank on the 30th of January, and it appearing that he had not commenced operations for the drilling of a well during the life of said contract, it was the duty of the trial court to have instructed a verdict in behalf of appellants. We therefore reverse said judgment and remand the case to the trial court, with instructions to render judgment for appellants, canceling, annulling, and setting aside said lease from Hines to Staley, and perpetually enjoining and restraining said appellees, their agents, employés, and contractors, from going on the said Hines' property for the purpose of developing oil or minerals, or any other purpose whatsoever; and, further, that they be likewise enjoined from interfering in any way with appellants in their effort to develop said property.

Reversed, with instructions to render.