AYCOCK v. RELIANCE OIL CO. et al.
(No. 429.)

(Court of Civil Appeals of Texas. Beaumont. March 27, 1919. Rehearing Denied April 16, 1919.)

1. MINES AND MINERALS ⬡73—OIL AND GAS LEASE—CONSTRUCTION.

Under oil and gas lease provisions that lessor was to be at no expense arising from the operation or development, that lessees were authorized to partition the land, and that the drilling obligation was not to be binding until partition, the burden of partitioning rested upon the lessees and not upon the lessor.

2. MINES AND MINERALS ⬡73—OIL AND GAS LEASE—CONSTRUCTION.

Oil and gas leases are construed most favorably to the lessor.

3. MINES AND MINERALS ⬡58—OIL AND GAS LEASE—MUTUALITY.

The objection that an oil and gas lease is void for want of mutuality because lessees are not bound to proceed with development is untenable, where lessees have paid an independent consideration.

4. CONTRACTS ⬡212(2)—MINES AND MINERALS ⬡58—OIL AND GAS LEASE—MUTUALITY.

That an oil and gas lease failed to stipulate a time in which lessees should proceed with development would not render it unilateral, since, where a contract fixes no time for performance, the law presumes the parties intended a reasonable time.

5. MINES AND MINERALS ⬡78(1)—OIL AND GAS LEASE—OBLIGATION OF LESSEE.

The payment by lessee of a valuable consideration for his oil and gas lease does not relieve

him of his obligation to proceed with diligence in the performance of his part of the contract.

Appeal from District Court, Hardin County; J. Llewellyn, Judge.

Suit by B. L. Aycock against the Reliance Oil Company and another. From judgment for defendants, plaintiff appeals. Reversed and remanded.

A. M. Hill and J. M. Combs, both of Kountze, for appellant.

A. Ludlow Calhoun, of Beaumont, for appellees.

WALKER, J. We take the following statement of the nature and result of this suit from the brief of appellee.

Appellant on the 18th day of June, 1918, filed his suit in the Seventy-Fifth judicial district court of Texas, sitting at Kountze, Hardin county, Tex., against the Reliance Oil Company and the Paraffine Oil Company, corporations of the state of Texas, alleging that the principal consideration moving him to execute the lease with W. W. Dies, and which is hereinafter set out and marked "Exhibit A," was the development of the interests for oil; that appellees were the assigns of W. W. Dies; that the transfer of all the oil except the royalty one-eighth contained in the land was the consideration moving appellees in the purchase of said lease; that the Sun Company operating on a tract of land adjacent to the land conveyed in said lease did, on the 8th day of September, 1917, bring in an oil well producing oil in paying quantities, and that by the happening of same appellees were required to commence drilling on the land covered in said lease contract, at least to drill an offsetting well. Appellees were notified to produce the original lease, its assignment to Jack Dies, and Jack Dies' assignment to appellees. Appellant asked that the contract be construed by the court, and that appellees be required to drill within a reasonable time a well at its cost on said 10 acres of land described in the lease, to commence drilling in not less than 30 days, and in good faith perform said contract; and, further, if the lease could not be held enforceable by reason of its being too uncertain and unambiguous, that same be annulled, vacated, and set aside.

Appellees answered, setting out its plea in abatement by showing that before the institution of suit appellant had filed his suit against appellees in the justice court of precinct No. 1, Hardin county, Tex., asking damages for violation of the lease contract upon which the suit in the Seventy-Fifth district court was based; and, further, that appellant had filed his suit in the county court of Hardin county for damages because of appellees'

210 S.W.—54

alleged violation of the terms of said lease contract, and which suit had been tried before a jury, and judgment was for appellees, and appellant was perfecting his appeal to this court, and that by reason of the institution of said suits, the subject-matter and parties being the same, appellant had asserted his remedy, and therefore he would be estopped from asserting the remedy asked for in this suit. Appellant further entered a general denial, and that the contingencies set out in said lease had not happened and no obligation rested upon appellees to drill.

Appellant filed his supplemental petition, with special exception to the pleas in abatement and bar, and appellees filed their first supplemental answer, on which pleadings the case went to trial before his honor, J. Llewellyn, judge of said court, without a jury. The court rendered judgment that appellant take nothing by his suit, and upon request of appellant the court filed its findings of fact and conclusions of law. The findings being duly excepted to, motion for new trial being overruled, and notice of appeal being given, same was brought to this court without a statement of facts.

### "Exhibit A.

"The State of Texas, County of Hardin.

"This contract made and entered into by and between B. L. Aycock of Hardin county, Texas, hereinafter called party of the first part, and W. W. Dies, of Hardin county, Texas, hereinafter called party of the second part, witnesseth:

"First. For and in consideration of the sum of three hundred ($300.00) dollars paid to party of first part by party of second part the receipt whereof is hereby acknowledged, and of the covenants and agreements herein embraced and undertaken by the second party, said first party does by these presents demise, let and lease and assign unto the second party the tract of land hereinafter described, for the purpose of exploiting the same for, and the production of minerals therefrom, and he does by these presents also grant and convey all of the oil, gas and other minerals in and under said land except as set out in paragraph 4 hereof, also the exclusive right of drilling and operating thereon for oil or gas, together with the right of way for and a right of way to lay pipe lines to convey water, oil, steam and gas, and the right to have sufficient water, oil and gas from the premises to drill and operate any wells that he may bore, and also such other privileges as are reasonably requisite for the conduct of said operations, and the right to remove at any time from said premises, any and all property which may have been placed thereon by said W. W. Dies. The said premises as to which this instrument does apply are situated in Hardin county, Texas, and described as follows: An undivided one-fourth interest in ten acres out of the Champion Choate survey of five hundred and fifty-three and one-half acres, in the Batson oil field, being my entire interest in said acres, and more particularly described as follows:

[Here follows description of said ten acres by metes and bounds.]

"Second. The party of the second part is hereby given the exclusive right and privilege to go on and upon said land, and take possession thereof for the purpose of holding possession thereof as the lessee and tenant of the first party, and for the purpose of drilling for and prospecting for oil and other minerals thereon.

"Third. The party of the second part shall develop said land for oil, and other minerals whenever it is necessary to protect said land from being drained by wells on adjacent land, and within a reasonable time, that is to say, when a well or wells shall have been completed and are producing oil in paying quantities within 200 feet of the boundary lines of the land covered by this lease. Second party is hereby authorized to partition said ten acres with Gulf Production Company. The drilling obligation herein not to be binding until said land is partitioned.

"Fourth. Party of the second part agrees to deliver to party of the first part one-eighth of all oil or other minerals produced by virtue hereof in pipe line, free of expense to first party.

"Fifth. The second party shall have the right to abandon the operation of any well or wells on said land whenever it becomes unprofitable to continue the operation thereof. In such event he shall thereafter have the right to pull the casing therefrom and remove any and all improvements placed upon said land by him.

"Sixth. The party of the first part is to be at no expense or liability whatsoever, connected with, arising from or growing out of the operation or development of· said land for oil or other minerals by second party hereunder.

"Seventh. All rights, privileges, and conditions hereto between the parties hereof, shall extend to the heirs or assigns of the parties, and to their executors and administrators.

"Eighth. For any default herein upon the part of the party of the second part, or his assigns of the obligations undertaken herein, this lease and all rights hereunder shall become null and void.

"Ninth. Party of the first part hereby warrants and agrees to defend the title to the property hereby leased unto party of the second part, his heirs and assigns, by, through, or under him.

"Witness our hands at Kountze, Texas, this 17th day of May, 1916.          B. L. Aycock.
                                        "W. W. Dies."

This case was tried before the court without a jury, and the trial court filed findings of fact and conclusions of law. We give here the fifth finding of fact, to wit:

"I find that the Sun Company, a corporation, did drill an oil well on what is known as the Milhome tract and known as well No. 59, which was within 200 feet of the boundary line of the 10-acre tract in the Champion Choate survey, in which plaintiff had an undivided one-fourth interest, and which was leased to W. W. Dies and by proper conveyances to the defendants in this cause, and which came in producing oil in paying quantities on September 8, 1917, and produced oil until the 19th day of October, 1917, when it sanded up, and from which day it has not produced oil. The well produced 2,801 barrels of oil during said time"

—and the second conclusion of law, as follows:

"That well No. 59 of the Sun Company was a well producing oil in paying quantities as stipulated in the oil lease contract, and the drilling obligation of said clause had matured, and defendants would have been obliged to drill an offset well, but for the clause in said contract which stated, 'That drilling obligation herein not to be binding until said land is partitioned.' That under the lease contract the obligation to partition was not mandatory or obligatory upon the defendants, and, the plaintiff not having secured a partition of the land, no duty rested upon defendants to drill, and therefore they had not violated the lease contract, and plaintiff was not entitled to relief prayed for."

On these findings of fact and conclusions of law the trial court rendered judgment for the appellees. We further find that, notwithstanding the lessees paid a very substantial independent consideration for this lease, construing the whole instrument together, the real and moving consideration was that this land should be prospected for oil with due diligence on the happening of the contingencies stated in the lease; that is, when a well producing oil in paying quantities· had been completed within 200· feet of the boundary lines of the land, and when this land had been partitioned.

[1, 2] Appellant assigns as error the construction of the contract as made by the court, his proposition being that under the express terms of this contract the burden of partitioning this land rested on appellees and not on him. Without applying to this contract the peculiar rules of construction applicable to oil· leases, we believe this proposition is sound. Paragraph 6 of this lease provides:

"The party of the first part is to be .at no expense or liability whatsoever, connected with, arising from or growing out of the operation or development of said land for oil or other minerals by second party hereunder."

Paragraph 3 makes the partition of this land a condition precedent to the beginning of drilling operations. It seems to us clear from the express terms of this contract that the partitioning of this land must be considered as a part of the operation and development of this land for oil. If so, then under the sixth paragraph, the expenses of this ·partition must be borne by appellees. The effect of the third paragraph is to vest in appellees the authority to make a partition by agreement with the other holders of the title, and, if not able to do so, to save this lease from forfeiture pending the contingencies and delays of a suit in court to force partition. However, this construction of the contract, we think, is made more

manifest by the following rule of construction applied to oil leases. Archer in his Law and Practice in Oil and Gas, p. 6, announces this rule as follows:

"In the construction of oil and gas leases different rules obtain from those applied to the construction of ordinary leases, or other mining leases, owing to the peculiar nature of the mineral, and the danger of loss to the owner from drainage by surrounding wells. · The general rule is that oil and gas leases are construed most strongly in favor of the lessor."

This rule is well supported by the decisions of many states, and especially by Emery v. League, a Texas case, reported in 31 Tex. Civ. App. 474, 72 S. W. 606. This same rule is announced by Donahue in his work on Petroleum and Gas, p. 149, and in the Third Edition of Thornton on the Law of Oil and Gas, § 251.

This lease contract does not, by its terms, require appellant to partition the land. Appellees insist that it does not require them to do so. But by the express terms of the contract, it is provided, "The drilling obligation herein not to be binding until said land is partitioned." Thus, it clearly appears that the parties to this contract intended that the one or the other should assume this burden. Construing the contract as a whole, and applying to this contract the rule above quoted, construing the same most favorably to appellant, this duty rested upon appellees.

[3] Appellant further assigns that this contract is unilateral and void for want of mutuality. We do not think so. Under the settled authorities construing · oil leases, as we understand them, this · contract to ·give it the construction contended for by appellees, that is, that appellees are not bound to partition this land, would make the same void for want of mutuality, but for the independent consideration paid, because there is nothing in the contract requiring appellant to partition the land, and, if appellee is not required to partition the same, then there is no enforceable obligation on either party. The court says, in Emery v. League:

"The primary purpose of the contract being the development of the land, if the lessee was not bound to proceed with such developments the lessor would not be bound to perform his part of the contract."

—and hence, the contract would be void for want of mutuality. However, the independent consideration paid relieves this contract of this criticism.

Wilkinson and Richardson, in their Law of Oil and Natural Gas, p. 120, announce the following rule:

"But if an independent valuable consideration sufficient to support the contract has been paid, the fact that further undertakings by the purchaser were not absolute, but merely things which were to be done at his option, would not render the contract void as being an option or unilateral contract without consideration. If the matters left optional with ·him were conditions to his acquiring or retaining the rights granted, either expressly or by implication, he might forfeit his rights by failure to perform, but the question becomes then one. of forfeiture of a conditional grant, rather than of the va-' lidity of an optional or unilateral contract. This distinction may not always have been kept in mind in the language of the decisions above reviewed. Compare Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S. W. 860; Emery v. League, 31 Tex. Civ. App. 474, 72 S. W. 603; Roberts & Corley v. McFadden, Weiss & Kyle, 32 Tex. Civ. App. 47, 74 S. W. 105; National Oil & P. L. Co. v. Teel, 95 Tex. 586, 68 S. W. 979; s. c., 67 S. W. 545; Witherspoon v. Staley, 156 S. W. 557; Great Western Oil Co. v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 57; Owens v. Corsicana Pet. Co., 169 S. W. 192."

[4, 5] The failure of the contract to stipulate a time in which to partition the land does not make it unilateral. As said by the court in Emery v. League, supra:

No time being fixed within which to secure partition, "the presumption of law is that the parties intended a reasonable time. * * * The payment of a valuable consideration for a lease of this character. can in no way affect the obligation of the lessee to proceed with diligence in the performance of his part of the contract."

There·is no statement of facts in this record; and, as we are not able to dispose of same properly on the findings of fact made by the trial court, we remand this cause for a new trial, with instructions to give this contract the construction herein indicated.

This cause is reversed and remanded.