OWENS et al. v. CORSICANA PETROLEUM CO. (No. 629.)†

(Court of Civil Appeals of Texas. Amarillo. May 30, 1914. On Motion for Rehearing, June 27, 1914.)

1. APPEAL AND ERROR (§ 213*) — PRESENTATION OF GROUNDS OF REVIEW—NECESSITY.

Acts 33d Leg. c. 59, declaring that objections or exceptions to the charge of the court not made in the trial court shall be deemed waived, does not apply to peremptory instructions, such as the direction of a verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1149, 1165, 1304–1308; Dec. Dig. § 213.*]

2. APPEAL AND ERROR (§ 719*)—MATTERS REVIEWABLE—FUNDAMENTAL ERROR.

The action of the trial court in directing a verdict is an error apparent upon the face of the record, which the appellate court will consider as fundamental error, even in the absence of an assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

3. CONTRACTS (§ 10*)—VALIDITY—UNILATERAL CONTRACT.

A contract between an owner of oil lands and an oil company, giving the company the right to bore for oil, or to pay quarterly rentals, which, upon acceptance by the owner, extended the contract for another quarter, or to surrender the lease at any time upon the payment of $5 to the owner, was a unilateral contract, void for want of mutuality, the $5 being merely a nominal consideration and no consideration for the grant; so that, where the company took no steps toward boring a well for 18 months, although it drilled wells upon three sides of the land in question, the effect of which would be to drain oil from it, the owner, on refusal of the agreed rental, had the right to cancel the lease; this being due to the nature of the business of oil mining, and to the temptation offered a shrewd operator to purchase at a nominal price the right to develop lands the owner of which is ignorant of their real value, and to hold them indefinitely for speculation, neither working them himself nor permitting another to do so.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 21–40; Dec. Dig. § 10.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

**4. MINES AND MINERALS (§ 78*) — LEASES — TIME FOR PERFORMANCE.**

Under such contract the company, without notice that the owner would refuse one of the quarterly rental payments, did not have a reasonable time after his refusal to begin boring a well; since the purpose of the extensions was to enable the company to develop the property and to pay the real consideration for the exclusive grant.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 205–207; Dec. Dig. § 78.*]

**5. MINES AND MINERALS (§ 77*) — LEASE — WAIVER OF FORFEITURE.**

A lessor, by permitting the lessee to expend large sums of money in developing oil property, may waive his right to declare a forfeiture provided by the lease.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 204; Dec. Dig. § 77.*]

On Motion for Rehearing.

**6. MINES AND MINERALS (§ 73*) — CONTRACTS AND CONVEYANCES—"OPTION."**

A contract or lease made whereby the owner, in consideration of a certain amount, granted all the oil, etc., under the lands for ten years, and as much longer as oil, etc., was produced in paying quantities, yielding to the owner one-eighth part of all oil produced, providing that the company should complete a well within one year thereafter or pay to the owner as a lease rental a certain amount each quarter during the term or until the well was completed, that the drilling of a productive well should be full consideration for the lease, that the company might surrender the lease at any time upon payment of $5, or continue it from quarter to quarter by making the agreed quarterly payments, and that the owner disclaimed any right to forfeit the lease on account of the option thereby granted for a valuable consideration, was an "option" contract, and nothing else. (Citing Words and Phrases, vol. 6, pp. 5000–5002; vol. 8, p. 7739.)

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 201, 210; Dec. Dig. § 73.*]

**7. MINES AND MINERALS (§ 78*) — CONVEYANCE AND CONTRACTS.**

Under such contract the company had 12 months within which to complete a well, and was required to begin operation within such time as would enable it to complete the well within that time; the provision for extension of the lease for 3 months after payment of each quarterly rental being to enable the company to complete a well already begun within 12 months, and not to give it time during which it might hold the land and delay its development or the commencement of a well.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 205–207; Dec. Dig. § 78.*]

**8. MINES AND MINERALS (§ 78*)—CONTRACTS AND CONVEYANCE—CONSTRUCTION.**

Contracts in which land is leased for development for oil are to be construed most favorable to the lessor, and, in order to preserve its rights, the lessee must begin performance within a reasonable time, and continue performance with reasonable diligence; for the reason that discovery and production of oil is a condition precedent to the continuance or vesting of any estate in the premises, that such operations make the land less valuable for agricultural purposes and, if delayed, result merely in speculation.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 205–207; Dec. Dig. § 78.*]

**9. MINES AND MINERALS (§ 73½*) — CONTRACTS—DURATION.**

While the failure to have a time limit upon a contract or lease for the prospecting and development for oil wells, is a ground upon which it might be declared to be void, a limit of ten years during which the lease might be extended from quarter to quarter on the payment of the rentals at the option of the lessor should not establish the validity of such a contract.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 200; Dec. Dig. § 73½.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Mrs. M. J. Owens against the Corsicana Petroleum Company and others. Judgment for defendant, Petroleum Company, and plaintiff appeals. Reversed and remanded.

Slay & Simon and Theodore Mack, all of Ft. Worth, for appellant. Geo. C. Greer, of Dallas, and Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

HALL, J. Mrs. Maria J. Owens, as the surviving wife of M. J. Owens, deceased, and in her own behalf, as well as for the heirs of said decedent, instituted this suit against appellee and S. B. Brooks, its receiver, Mrs. Julia Owens, and Gus Owens, as defendants, for the cancellation of a lease on 188 acres of land. Among other stipulations not necessary to the determination of the questions involved, the lease contained the following:

"Witnesseth: That the grantors in consideration of twenty-eight and 20/100 ($28.20) dollars, in hand paid by the grantee, the receipt of which is hereby acknowledged, has granted, bargained, sold, and delivered unto the grantee all the oil, gas, coal, and other minerals in and under all that certain tract of land hereinafter described, with covenants of general warranty, and that the grantors have the sole right to convey the premises with' the exclusive right of drilling, mining, and operating thereon for and producing oil, gas, coal, and other minerals with all the rights necessary and incident thereto, such in part as right to construct and maintain telegraph and telephone and pipe lines, and roadways leading to and from adjoining lands on and across the premises and other lands of the grantors and the right to erect and maintain buildings and other structures and to use water from the premises for convenience in and the purpose of operating this and neighboring lands, and the right of removing, either during or after the term hereof, any property or improvements placed or erected on the premises by grantee."

"To have and to hold unto and for the use of the grantee, for the term of ten years from the date hereof, and as much longer as oil, gas, and other minerals are produced in paying quantities, yielding to the grantors the one-eighth part of all oil produced and saved from the premises, delivered free of expense into tanks or pipe lines to the grantor's credit, in which part shall be included any royalty or interest in said oil that may have been heretofore sold, reserved, or conveyed by said grantors or their predecessors in title."

"Grantee agrees to complete a well on said premises within one (1) year from the date hereof, or thereafter pay to grantors as lease rental twenty-eight and 20/100 ($28.20) dollars, each three months in advance from the 6th day

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

169 S.W.—13

of June, 1912, from quarter to quarter, to the end of the term or until said well is completed (or this lease is surrendered as herein stipulated), and the drilling of such well, if productive, shall be full consideration to grantors for grant hereby made to grantee, with exclusive right to drill one or more additional wells on the premises during the existence of this grant. But the completion of a nonproductive well shall operate only as liquidation of all lease rentals hereunder for a period of six months from the date of its completion."

"It is fully understood and agreed that, for and in consideration of the money paid and the delivery thereof and the payment for extension of lease rental above mentioned, grantee acquires and has the right and option, either to surrender this grant at any time upon the payment of the sum of five ($5.00) dollars, and all amounts then due under and thereafter be released and discharged from all payments, obligations, and covenants herein contained, whereupon this grant shall become null and void; or to continue the same in full force and effect from quarter to quarter and from year to year, by making the stipulated quarterly payments which. the grantors hereby bind themselves to accept when tendered and grantors expressly renounce and disclaim any right to claim or ask for a forfeiture of this grant or any provision thereof on account of the option herein, for a valuable and satisfactory consideration granted. Grantors agree that the delivery to grantors of a deed of surrender, duly authenticated of record, or the recordation of same in the proper county and deposit in the post office of a check payable as above provided, for the said sum of $5.00, and all amounts then due hereunder, together with notice of such surrender, shall be accepted as full legal surrender of this grant, and that all terms, conditions, and limitations between the parties hereto shall extend to their heirs, successors, personal representatives, and assigns."

The property was the homestead of the grantors. This instrument was signed by Mrs. M. J. Owens and her husband, and witnessed by Louis Campbell.

The substance of plaintiff's petition is that the lease was a unilateral contract, and void for want of mutuality; that there had been a breach of the terms and conditions of the lease; and that the defendant had abandoned it.

[1] The court peremptorily instructed a verdict for the appellee. The appellee objects to the consideration by us of appellant's assignments of error, upon the ground that the act of 1913 (chapter 59, p. 113) precludes appellant from objecting to the charge of the court here, because no objections or exceptions were made in the trial court. This statute does not apply to peremptory instructions.

[2] It has been held a number of times in this state that the action of the trial court in directing a verdict is an error apparent upon the face of the record, and requires of the appellate court the full consideration of all fundamental errors, even in the absence of assignments of error.

[3] Ten propositions are submitted under the first assignment of error, each of which it is our duty to consider as fundamental error. Without taking up the propositions in the order presented, we will consider the first contention, which is that the contract is unilateral and void for want of mutuality. A careful reading of the contract shows that the appellee had the right to bore for oil or to pay the quarterly rental of $28.20, or to surrender the grant at any time upon the payment of $5 to the grantors. It is apparent that the only right which the grantors could have enforced and the only real obligation resting upon the appellee was to pay $5. By the great weight of authority this is held to be merely a nominal consideration, and no consideration, in fact, for the grant. In other jurisdictions we find the courts are at variance in their construction of oil and gas leases, but it seems to be settled in this state that contracts of this character, to quote Judge Gaines, in National Oil & Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 980, "do not pass an interest in the lands, but are mere contracts for an option by which they may acquire such interest." On March 6, 1913, the lease sought to be canceled herein had been in existence for one year and nine months, and the uncontroverted evidence is that the appellee had taken no steps whatever toward boring a well on the premises. Appellee had the right, by the payment of the quarterly rental provided for in the instrument, to continue the option for three months; but, since the contract was unilateral and void, unless the appellant, Mrs. Owens, accepted the rents at the expiration of each quarter, and by so doing agreed to continue the option for three months longer, appellee had no contract and no right which it could enforce, in the absence of a showing that it had in good faith attempted to explore for minerals. It is said:

"Such leases vest no present title in the lessee. If at any time the lessee has the option to suspend operation, the lease is no longer binding upon the lessor, because of want of mutuality. A lease should not be construed so as to enable the lessee to hold it merely for speculative purposes without doing what he stipulated to do and what was clearly in contemplation of the lessor when he entered into the agreement. The trend of the decisions has been almost uniformly in favor of the lessor. Generally, it is the lessee who is favored, and, after a substantial compliance with the terms of the contract, equity will not regard a technical breach; but with mineral leases it is otherwise. This is due to the nature of the business of mining, and especially of oil mining, and to the temptation offered a shrewd operator to purchase at a nominal price the right to develop lands the owner of which is ignorant of their real value, and to hold them indefinitely, neither working them himself nor permitting another to do so." Steelsmith v. Gartlan, 45 W. Va. 27, 29 S. E. 978, 44 L. R. A. 107.

The facts in this case show that appellee had drilled wells upon three sides of the land in question, the effect of which would be to drain the oil from appellant's land. This condition shows the necessity of due diligence upon the part of appellee to take advantage of the option given them under the contract and bore a well upon appellant's premises. Our construction of this contract is sustained by the Teel Case, supra; J. M. Guffey Petroleum Co. v. Oliver (Civ. App.)

79 S. W. 884; Forney v. Ward, 25 Tex. Civ. App. 443, 62 S. W. 108; Roberts v. McFadden, 32 Tex. Civ. App. 47, 74 S. W. 105; Emery v. League, 31 Tex. Civ. App. 474, 72 S. W. 607; Hodges v. Brice, 32 Tex. Civ. App. 358, 74 S. W. 590; Presidio Mining Co. v. Bullis, 68 Tex. 581, 4 S. W. 860; and Witherspoon v. Staley (Civ. App.) 156 S. W. 557, and authorities from other states cited therein. In the last-named case it is said:

"Hence, in order to bind appellant Hines [the grantor], he either must have received this money [the rents for 60 days] or by some work or conduct of his must have induced appellee to have acted in his behalf to his injury or detriment, which is not shown. In fact, nothing was done by Staley [the lessee] between the 30th of January and the 3d of February, when written notice was given him by Hines of his refusal to accept said payment and declaring said contract forfeited, except the hauling, on the 30th of January, of one load of pipe to the land, and it is not shown whether this took place before or after Hines was informed of the deposit of the $25, and which said pipe was still on the land at the time of this trial. Besides this, if the evidence had shown such facts as constituted an estoppel on the part of appellant Hines, it could not have affected or changed the result, for the reason that appellees have pleaded no estoppel whatever as against him, and therefore could assert none."

[4] Appellee insists, since it appears from the testimony of appellant, Mrs. Owens, that it had no notice of the fact that she would refuse the lease money on March 6th, that it had a reasonable time after her refusal to begin boring a well. It having been uniformly held, in accordance with the decision of Justice Gaines in the Teel Case, that there is a want of mutuality in contracts of this character, and that there is therefore no consideration to support the grant, the contract is void, we cannot assent to this proposition. The primary purpose of the grant on the part of appellant was to have the land explored for the purpose of ascertaining the existence of minerals thereunder and to obtain the benefits from its development. This was the real consideration for the grant. Appellee had one year from the date of the contract in June, 1911, to bore the well, and, if the well was not completed within that time, it could extend the lease from time to time for three months, provided the grantors would accept the rents and consent to such extension. The purpose of promoting these extensions was clearly not to enable appellee to hold the land without development during the entire term of the lease (which was stated to be ten years), because in such time, by surrounding the premises with other wells, appellee might have taken the oil, or a greater part of it, from under the grantor's land; but the purpose in providing for extensions from time to time must be held to have been to enable appellee to develop the property, or, in other words, pay the real consideration for the exclusive grant. It appears from the statement of facts that, a few days after appellant refused to accept the rent provided for in the contract and extend the op-

tion, appellee hauled lumber and other materials upon the land, and within a few months completed a well upon the premises at an expenditure of about $12,000, that the well was at the time of the trial producing 117 barrels of oil a day; and appellee contends that because of certain acts and conduct upon the part of appellants, which induced it to proceed with the work, they are estopped from maintaining this suit. Without discussing the evidence bearing upon this issue, and the right of appellee to sink a well after the expiration of the option, we merely state that it was sufficient to have required the court to submit the issue to the jury.

[5] It is held that the lessors, by permitting the lessees to expend large sums of money in developing the mine, may waive their right to declare a forfeiture, and this rule may, upon another trial, apply to this case. Washington v. Rosario Mining & Mill. Co., 28 Tex. Civ. App. 430, 67 S. W. 459; Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396.

Because the court erred in peremptorily instructing a verdict, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

In its motion for rehearing it is insisted by appellee that we erred in stating that appellant's land had oil wells upon three sides, but reference to the statement of facts shows that we are correct. Mrs. Owens and her daughter both testified to that effect, and they are sustained by appellee's witness, Faulkner.

By an extended argument, in which many of the cases involving the main question to be passed upon has been discussed, we are asked to again review the authorities in this state, and it is earnestly insisted that we are in error in holding the contract to be unilateral and void for want of mutuality. As stated in the original opinion, this contract gives the oil company the option of abandoning the lease at any time, merely upon the payment of $5, and whatever lease money may be due at that time. But for this provision the case would come within the rule announced in Great Western Oil Co. v. Carpenter, 43 Tex. Civ. App. 229, 95 S. W. 57, in which a writ of error was refused by the Supreme Court. Reese, J., said in that case:

"No option is given the lessee to do this work or not [to sink one or more wells on the leased lands within 18 months and to commence work on the first well within 6 months of the date of the contract] or to let the lease lapse on account of his failure if he so elects. In case of failure of the lessee to commence work on the first well within 6 months, the option is given to the lessors to cancel the lease, but, unless the lessors chose to exercise this right of forfeiture or cancellation, the lessee can be held, at all events, to a compliance with his obligation to do the work specified in the contract and expressly agreed to be performed by him. It is true that, if the lessors elect to cancel the lease for default on the part of the lessees, the

lessees may prevent such cancellation and continue the lease in force for another year by paying to the lessors ten cents per acre per annum as rental; but that in no way affects the right of the lessors to demand, at all events, a compliance on the part of the lessee with his express obligations under the contract to do the work specified."

It will be seen by reference to the contract in the instant case that appellee has the absolute right, upon the payment of unpaid rent and $5, to surrender the grant at any time. In the face of this stipulation, how can it be contended that appellants could, by suit for specific performance, require appellees to drill a well, or recover any damages by reason of its failure to do so? Continuing, in the Carpenter Case, Judge Reese says:

"This right in the lessee to continue the lease for one year on payment of the annual rental provided only becomes effective in the event the lessors elect to exercise their option to cancel for failure to do the work specified in the contract. The result of such failure is not to put an end to the contract unless the lessors elect to have it so. In the case of Hodges v. Brice [32 Tex. Civ. App. 358], 74 S. W. 590, the lease or option under discussion provided that, if the lessee 'fails to commence a well upon said premises within 6 months, or unless he shall thereafter pay to the first party (the lessors) $4.00 per month from month to month until the well is commenced, this lease shall be null and void.' It was optional with the lessee to either commence the well or pay the $4 per month, or to do neither, in which case the lease became null and void. The lease or option, as declared by this court, was held to be void, citing Emery v. League [31 Tex. Civ. App. 474], 72 S. W. 606. In the cited case, which was decided by this court, the lease or option was of an undivided interest of 14 acres of land, and the lessee undertook and obligated himself to have the land partitioned and to begin operations in good faith within 6 months after the final division of the land, and to have 6 months thereafter within which to prospect the land and complete a well. It was held that the contract bound the lessee to have the land partitioned within a reasonable time, as otherwise there would be no time limit to the option granted him to prospect and develop the land, in which case the contract would be void for want of mutuality. The court says: 'The primary purpose of the contract being the development of the land, if the lessee was not bound to proceed with such development, the lessor would not be bound to proceed with his part of the contract. No development could be made until the land was partitioned.' The lessee not having complied with his contract to proceed to have the land partitioned within a reasonable time, it was held that he had forfeited his rights under the contract. The inference to be drawn from the opinion is that the contract would have been upheld if the lessee had complied with his agreement, which furnished a sufficient consideration for the contract. Applying the rule therein laid down to the facts of the present case, it would seem clear that the leases of January 28, 1901, were valid, and the lessee entitled to all the benefits of the grant, unless and until forfeited, at the option of the lessor, for failure to begin operations within 6 months, and complete a well on each tract within 18 months, as agreed. In the case of Roberts v. McFadden [32 Tex. Civ. App. 47], 74 S. W. 105, the lease contract in question provided that the lessee might terminate it at any time, in which case the sum paid to the lessor should be his full compensation for any injury sustained. No sum had, in fact, been paid,

and, the lessee not being bound to do or perform anything, the contract was held to be unilateral and void. To the same effect was the contract considered and pronounced void in the case of National Oil Co. v. Teel, 67 S. W. 545; the decision of the question resting upon the fact that the contract did not bind the lessee to do anything. We have not been able to find a case in which it has been held that a contract which binds the lessee, as the contracts of January 28th in the present case do, unconditionally, and not at his own option, to do specified work within a specified time, upon the leased premises, has been held to be a unilateral contract, and unenforceable for want of consideration."

[6] Apply the rule announced there to the stipulation in the contract under consideration: Here the lease was made June 6, 1911, and provided that the grantors, in consideration of $28.20, had granted, etc., all the oil, etc., under the land in controversy, and provided that the lease was to continue for a term of ten years—

"and as much longer as oil, gas, or other minerals are produced in paying quantities, yielding to the grantors the one-eighth part of all oil produced and saved from the premises. * * * Grantee agrees to complete a well on said premises within one year from the date thereof, or thereafter pay to grantors as a lease rental $28.20 each three months in advance from June 6, 1912, from quarter to quarter, to the end of the term or until said well is completed, or this lease is surrendered as herein stipulated, and the drilling of such well, if productive, shall be full consideration to grantors for the grant herein made to grantee."

It is further stipulated:

"It is fully understood and agreed that for and in consideration of the money paid and the delivery thereof, and the payment for the extension of the lease rentals above mentioned, grantee acquires and has the right and option either to surrender this grant at any time upon the payment of $5.00 and all amounts then due hereunder and thereafter be released and discharged from all payments, obligations, and covenants herein contained, whereupon this grant shall become null and void; or to continue the same in full force and effect from quarter to quarter, and from year to year by making the stipulated quarterly payment which grantors hereby bind themselves to accept when tendered, and grantors expressly renounce and disclaim any right to claim, and ask a forfeiture of this grant or any provisions thereof on account of the option herein for a valuable and satisfactory consideration granted. Grantors agree that delivery to grantors of a deed of surrender, duly authenticated, for record or recordation of same in the proper county and deposit in the post office of a check payable as above provided, for the said sum of $5.00, and all amounts then due thereunder, together with notice of this surrender, shall be and be accepted as a full and legal surrender of this grant, and all terms, conditions, and limitations between the parties hereto shall extend to their heirs, successors, personal representatives, and assigns."

Even if the parties had not termed this an option contract, the authorities are in tuneful accord that it is nothing else. 1 Elliott on Contracts, § 232; 6 Words and Phrases, pp. 5000–5002. What had appellee bound itself by the contract to do? True, it has promised to "complete a well" on the premises within a year; but could appellants enforce that promise by a suit for specific performance, or

could they recover damages for failure to comply therewith? Such an action would be successfully met and defeated by the further provision, if set up by appellee, that, in the event the well is not completed within one year, appellee had the right to pay the $28.20, and thus extend the option for three months. Then suppose appellants should file suit to recover upon this option for a longer term than three months. They certainly could not prevail in any such action, in the face of the express stipulation that the right to extend if for more than three months at a time is optional with appellee. If appellants could neither recover damages, require the completion of a well nor recover $28.20, rent without the consent of appellee, the contract is clearly unilateral and void. Any attempt to do either of these things could be instantly defeated by appellee by interposing that term of the contract whereby it is permitted to surrender the grant upon the payment of $5. No one will contend that the $5 mentioned therein is an adequate or sufficient consideration for anything granted or surrendered in the contract. This feature distinguishes the instant case from the Carpenter Case, supra.

We will briefly review some of the cases cited by appellant in its motion: The consideration of $1 set out in the Carpenter Case was held to be an adequate consideration for the lease. Appellee quotes from the case of J. M. Guffey Petroleum Co. v. Oliver, 79 S. W. 884. The lease contract in that case was based upon a consideration of $1, and contains this stipulation.

"It is agreed that the second party, * * * upon the payment of $2.00 at any time by the party of the second part, its successors or assigns, to party of the first, heirs or assigns, said party of the second part, its successors or assigns, shall have the right to surrender this lease for cancellation, after which all payments and liabilities thereafter to accrue under and by virtue of its terms shall cease and terminate and this lease become absolutely null and void."

In construing the contract, Garrett, C. J., said:

"The contract in this case was an option to the lessee. It was executed in consideration of royalties reserved, and though silent as to the extent of development required, the law implies a condition for diligent, good faith, and reasonable development. * * * By the second group of assignments the defendant seeks to maintain that the contract was not unilateral and void for want of mutuality, because: (1) There was a covenant on the part of the obligee to do something involving the expenditure of money, time, or labor; (2) it provided that the lessee could put an end to it only by paying a valuable consideration; and (3) although void in the beginning for the want of mutuality, when the lessee accepted the option, and had partly executed the contract, his act related back, and made it binding from the beginning. Although the option had been complied with by the commencement of work, as stipulated, and the contract may have lost its unilateral character, yet, as above stated, it was subject to forfeiture for failure to diligently prosecute the development of the land for oil; and this notwithstanding the expenditure of money and labor already made, if it fell short of a compliance with the obligation, and the facts alleged in the petition are sufficient to show the right of the plaintiff to forfeit the lease for want of development."

The provision in the lease that it may be surrendered by the defendant upon the payment of $2 makes it terminable at the will of the defendant. Since the sum named is only a nominal consideration, and will not deprive the lease of such character when the great value of the lease of the premises as oil-bearing land is considered, the trifling sum mentioned cannot be considered more than nominal. It is a well-established principle of law that, when it is provided in the lease that it is terminable at the will of one of the parties, it becomes terminable at the will of either. 1 Wash. Real Prop. (4th Ed.) 583; Robb v. Railroad, 82 Tex. 392, 18 S. W. 707. Many other authorities might be cited sustaining the general principle announced. In Marble Co. v. Ripley, 10 Wall. 339, 19 L. Ed. 955, the Supreme Court of the United States, passing upon a contract giving to one of the parties the right to terminate it upon a year's notice, held that it could not be enforced by Ripley because it gave the right to Ripley to terminate the estate by giving one year's notice, using the following language:

"Another reason why specific performance should not be decreed in this case is found in the want of mutuality. Such performance by Ripley could not be decreed or enforced at the suit of the Marble Company, for the contract expressly stipulates that he may relinquish the business and abandon the contract at any time on giving of one year's notice. And it is a general principle that when, from personal incapacity, the nature of the contract, or any other cause, a contract is incapable of being enforced against one party, that party is equally incapable of enforcing it specifically against the other, though its execution in the latter way might in itself be free from the difficulties attending its execution in the former."

The next case presented in the argument of appellee is Roberts v. McFadden, 32 Tex. Civ. App. 47 on page 57, 74 S. W. 105 on page 111. We insist that this case also sustains the position taken by us in the original opinion. We quote from the opinion as found as follows:

"This brings us to the question of the validity of the lease. It is contended by appellees that the lease is void for two reasons: First, it was a unilateral contract unsupported by any consideration and was forfeited by Junker's conveyance to defendants before any prospecting was done thereunder; second, because they purchased of Junker, for value without notice of the lease. We are of opinion that either of these objections is fatal to the lease. It was shown, without dispute, that the consideration of $1 named in the lease as paid was not, in fact, paid, and the only consideration upon which the contract rested, so far as the lessee was concerned, was the promise to develop the leased premises and to deliver to the lessor 10 per cent. of the gross oil product. It may be held, when the question is presented in this state (it has been intimated in the case of Oil Co. v. Teel, 67 S. W. 547), that the nominal consideration of $1, if paid, will support the option for the fixed time named in the lease. But here not only is it true that the cash consideration named was not in fact paid, but the contract was further weakened by the stipulation that the lessee could terminate the

lease at any time, and that the sum paid the lessor should be his full compensation for any injury sustained. No sum was paid the lessor, and thus he has sought to be held at all events for the full time, the lessee being bound in no respect to do or perform anything. We can imagine no more glaring instance of a unilateral contract."

Appellee does not contend in the instant case that the $28.20 consideration paid to Mrs. Owens and her husband, at the time of the execution of the lease was a consideration to support the option for a longer term than one year. If so, why was it provided that this amount should be paid thereafter quarterly? While in the Roberts v. McFadden Case, from which we have just quoted, the lessee was given the option of terminating the lease at any time without the payment of $5, as is provided in the instant case. The sum of $5 is so insignificant in amount as to render it totally inadequate as a consideration for anything pertaining to the lease.

In Emery v. League, 31 Tex. Civ. App. 474, 72 S. W. 603, the consideration named for the lease was $10, and it was provided that party of the second part (the lessee) shall begin operations in good faith on the land leased within six months after the lands had been partitioned, and that the second party should have six months after said period in which to prospect the land and complete a well, and contained this stipulation:

"Provided, however, it is distinctly understood and agreed that the party of the second part shall have the right to cease operations under this contract whenever it shall become manifest that it would be unprofitable not to do so," etc.

It is claimed that the contract was void:

"(1) For the want of mutuality; (2) for failure of consideration in that the real consideration for same was the promise and agreement of Emery to procure without delay and free of cost to his vendors a partition of the land and to explore, prospect, and develop said land for oils and other minerals, and that in the performance of said agreement and undertaking Emery had wholly failed; (3) because by the terms of said contract it is provided that same shall be effective only so long as the parties thereto should faithfully comply with the covenants and agreements therein undertaken to be performed, and that, said Emery having never performed or offered to perform, etc., the contract had been declared void."

In disposing of the issues, Pleasants, J., said:

"While the instrument under which appellant claims contains apt words of conveyance, and recites a valuable consideration which the evidence shows was actually paid, it cannot be held to be an absolute conveyance of the minerals underlying the land therein described, and the title to such minerals was not vested in appellant by the execution of said instrument. The whole instrument must be construed together, and, when so considered, it is apparent that the real consideration therefor was the prospecting and developing, with due diligence, the land therein described, for oil and other minerals. This was clearly the primary purpose of the grantors in the execution of said contract, and it is expressly provided in the instrument that the same shall remain in force and effect only so long as the parties thereto faithfully comply with the covenants and agreements undertaken to be performed. It is well settled that contracts of this kind do not vest an absolute title in the grantee, but only confer upon him the right to acquire title by a compliance with the terms of the contract and the discovery and development of oils or other minerals mentioned in said contract. In other words, such instruments are not conveyances of title, but are in the nature of options, and can only ripen into a title by compliance with their terms on the part of the grantee and the accomplishment of the purpose for which they were executed. * * * The instrument under consideration stipulates that appellant shall have six months after the partition of the land in which to prospect same and complete a well, and further stipulates that appellant shall procure a partition of said land. No time is fixed within which a partition must be secured, but the presumption of law is that the parties intended a reasonable time. It is to be observed that this is not a stipulation that appellant should have six months after the partition to begin his explorations, but shall have the right to prospect the land for that length of time, and it would seem that, under this stipulation, the failure to complete a well within the time named would terminate appellant's rights under the contract."

And so it may be said of the instant case.

[7] Our construction of the contract is that appellee had 12 months within which to *complete* a *well*, and the plain import of the language is that appellee should begin operations within such time as would enable it to complete the well within 12 months. We think, further, that the provision for an extension of the lease for 3 months was for the purpose of enabling appellee to complete a well already begun within the 12 months, if, perchance, from accident or other cause, its completion had been prevented or deferred. In our opinion, the stipulation in the contract under which appellee was permitted to extend the lease from term to term was not inserted for the purpose of giving it time during which it could hold the land, delay its development, or in which to commence a well.

[8] As said by Pleasants, J., in the Emery v. League Case:

"A different rule is applied to contracts of this character from that applied to ordinary leases, and the decisions uniformly hold that contracts in which land is leased for the purpose of being prospected and developed for oil are to be construed most favorably for the lessor. Bryan's Law of Petroleum, p. 146. In order to preserve his rights under a contract of this kind, the lessee must begin within a reasonable time the performance of his part of such contract, and continue in the performance of the same with reasonable diligence. The reason for this rule is thus forcibly stated in the case of Huggins v. Daley, 99 Fed. 613 [40 C. C. A. 19, 48 L. R. A. 320]: 'While most of the cases have gone upon the ground of abandonment, the governing principle in all oil leases of the character under consideration is that the discovery and production of oil is a condition precedent to the continuance or vesting any estate in the demised premises; that such leases vest no present title in the lessee, and if, at any time, the lessee has the option to suspend operations, the lease is no longer binding upon the lessor because of want of mutuality; and, where the only consideration is prospective royalty to come from exploration and development, failure to explore * * * renders the agreement a mere nudum pactum, and works a forfeiture of

the lease, for it is of the very essence of the contract that work should be done. And the smaller the tract of land the more imperative is the need for prompt and efficient drilling; for oil operations cumber the land, rendering it unavailable for agricultural purposes. The landowner is entitled to his royalty as promptly as it can be had. The danger of drainage from his small holding is increased by delay, and the resulting damage, not being susceptible of pecuniary measurement, is therefore not compensable. No such lease should be construed as to enable the lessee who has paid no consideration to hold it merely for speculative purposes, without doing what he stipulated to do, and what was clearly in the contemplation of the lessor when he entered into the agreement.' The payment of a valuable consideration for a lease of this character can in no way affect the obligation of the lessee to proceed with diligence in the performance of his part of the contract. Of course, a lessee might, by the payment of a valuable consideration, procure an option for a fixed time within which to prospect and develop mineral lands, but such is not the character of the contract under consideration."

In this case we think the original payment of $28.20 was a sufficient consideration for the option for the first year, and, since the parties so stipulated, the payment of a like amount was a sufficient consideration for the extension of the lease without development for each three months during which it was paid and accepted, and, in our opinion, appellant could, by the acceptance of said rent, at the beginning of each quarter, have bound herself to the end of the term, but, there being no obligation upon the part of appellee to pay the rent, and no binding promise having been made by it to do anything further than to pay $5 and overdue rent whenever it decided to surrender the lease, she was not bound to accept it when tendered at the beginning of any quarter, unless in the meantime appellee had in good faith begun to explore and develop the land.

It is insisted in the motion for rehearing that, because the grant contained this language, "Or to continue the same in full force and effect from quarter to quarter, and from year to year, by stipulated quarterly payments, which grantors hereby bind themselves to accept when tendered, and grantors expressly renounce and disclaim any right to claim and ask a forfeiture of this grant or any provisions thereof, on account of the option herein for a valuable and satisfactory consideration granted," the grantors are bound to receive the rent when tendered, and cannot be permitted to declare a forfeiture. Where is the consideration upon which such a contention can be based? It cannot be the amounts previously paid for the annual or quarterly rentals. Neither can it be held to be the $5, because it is nominal, and has never been paid. No move has been made towards developing the land, and, its promise to pay rents in the future being merely optional with appellee, there is absolutely no consideration for this undertaking on the part of appellee, and it has the right, at the end of any quarter, to declare a forfeiture and refuse to renew the option.

Appellee also quotes from Hodges v. Brice, 32 Tex. Civ. App. 358, 74 S. W. 590. We are unable to see where it can obtain any comfort from the opinion in that case. The suit was based upon a lease made by Parker and wife, which recited a consideration of $4, paid to them by Brice, and conveyed to Brice the oil and gas under certain lands, and contains, among others, the following stipulations:

"(1) In case second party fails to commence a well upon the said premises within six months from this date, or unless he shall thereafter pay to the first party $4.00 per month from month to month, until said well is commenced, then this lease shall become null and void. * * * (5) The second party may at any time remove all its property, and may reconvey to the party of the first part, his heirs and assigns, the premises and estate hereby granted, and thereafter be relieved from further liability from this grant and instrument."

It was further agreed that the lessee should have the right, at any time, to surrender up the lease and be relieved from all moneys due or conditions unfulfilled, then from that time the lease should be null and void and be no longer binding on either party, and that the payments which had been made to the lessors should be held by them as the whole stipulated damages for the nonfulfillment of the contract. Garrett, C. J., declared the lease to be void.

The case of National Oil & Pipe Line Co. v. Teel, was first decided by the Fourth Court of Appeals, and writ of error prosecuted to the Supreme Court. The opinion of James, C. J., speaking for the Court of Appeals (67 S. W. 545) shows that the lease recites the consideration of $1 paid, and contains this provision:

"In case operations for either drilling a well for oil or mining for coal or other minerals is not begun and prosecuted with due diligence within two years from this date, then this grant shall immediately become null and void as to both parties; provided, that second party may prevent such forfeiture from year to year, and no longer, by paying in advance $100.00 at his residence, until such well is completed, or until shipments from such mine have begun. The second party shall have the right to use sufficient gas and water to run all necessary machinery on this lease and adjoining leases owned by them, and also the right to remove all their property at any time. * * * These instruments may be treated as options or as conveyances. Until acted upon, they were real options, or in the nature of options. The form in which they are given is not material. Tested by the rules governing options, they were not binding on appellees, nothing having been done under them. It is essential in options that some time should be fixed within which the contemplated thing to be done, and, when no time is designated, the law will presume that the parties intended a reasonable time. Hanley v. Watterson [39 W. Va. 214] 19 S. E. 538. Not only is no time fixed in these instruments for performance, but when performance is to take place, if ever, is left to the will and discretion of the parties of the second part. They could by renewals, which were entirely optional with them, defer it indefinitely. The contract provides for this, and the courts would have no right, under these circumstances, to substitute a reasonable time. It is true the contracts provide that operations were to begin

with due diligence within two years, or they should become void, but in the same connection the second party is allowed to obviate this result from year to year afterward, by paying in advance each year $100. Thus it was at the will of the second party to delay performance from year to year indefinitely, and no ultimate time is set for performance. We have no doubt that the $1 consideration recited in the instruments would have been sufficient to support an option for two years and it might be claimed that when the two years were up the payment of $100 would support another option for another year, and so on ever afterwards; in other words, that these succeeding transactions are to be deemed separate and independent options, and each in itself valid, but this reasoning will not do, because, after all, each one depends alone on the will of the party of the second part, and no time for performance is fixed, and the renewals may be continued indefinitely. It is practically the same thing as laying a lump sum for an option to extend so long as the grantee cares to have it run."

[9] While it is true that the failure to have a time limit upon a contract of this nature is one ground upon which the courts have frequently declared them to be void, we are not able to conceive that a limit of ten years, during which the lease may be extended from quarter to quarter and from year to year, at the option of the lessee, should affect the question. In oil and gas leases the time limit should be a matter of secondary importance, by reason of the nature of the products. An oil speculator, by leasing or purchasing lands surrounding the particular tract upon which he had contracted to drill a well, as in this case, could rob the premises of its underlying products and render the land worthless for mining purposes. In the quoted case it is said:

"The real consideration of this instrument was not the recited $1 nor the $100 that after the two years might be paid in order that they might keep it from year to year, but the beginning and prosecuting with due diligence of wells for oil or minerals upon the land; in other words, the development of the property for oils and minerals in the near future. This was the clear purpose of the grant. According to the terms of the contracts, it is left optional when this consideration is to be performed, if ever. They admit of the consideration being withheld absolutely and for all time without any power on the part of the grantor to insist upon performance. In other words, it is left with the vendee and his assigns to abstain from beginning operations and to keep the lands from being developed by the vendor or any one else as long as they see fit, and to withhold altogether the real consideration upon which the contracts were based. * * * The absolute control the contracts gave him in respect to the performance of the 'conditions subsequent' and the absence of any right in the vendors to insist on performance renders the same objectionable for the want of mutuality. The work was not begun; hence no equities exist in favor of appellants. They were not bound to perform, and could abandon the matter at any time. Under these circumstances, appellees were also not bound, and they had the right to annul the contracts."

The Supreme Court, in passing upon this case, affirmed the judgment of the Court of Civil Appeals, in 95 Tex. 591, 68 S. W. 979, Gaines, J., saying:

"Viewing the written agreements in the light most favorable to these parties, they do not pass an interest in the lands, but are mere contracts for an option, by which they may acquire such interest. A naked agreement by which one promises to convey to another an interest in land in consideration of money to be paid or acts to be performed by such other, but which does not bind the other to pay or perform the consideration, as the case may be, cannot be enforced. In such case there is a want of mutuality in the agreement. The one party promises to do something; the other does not promise absolutely to do anything; hence there is no consideration to support a contract, and it is void. On the other hand, a promise to give an option is valid if supported by an independent consideration. For example, if a sum of money be paid for the option, the promisee may, at his election, enforce the contract."

In the written argument accompanying the motion for rehearing in this case appellee presents the notation made by the Supreme Court, in refusing the writ of error in the case of Staley v. Witherspoon, 156 S. W. 557, as follows:

"W. H. Staley et al. v. C. S. Witherspoon et al. No. 8303. Refused, upon the ground that the contract was forfeited. We do not commit ourselves to the proposition that the contract was void merely because it was a contract for an option, and was unilateral in its character, as held by the Court of Civil Appeals. Granting that it was unilateral and a mere contract for an option, it may have been enforceable as such a contract because supported by a consideration paid and limited to a definite time."

Nor do we commit ourselves to the proposition that a contract for an option is void where the consideration has been paid. We think, when Mrs. Owens accepted the annual and each of the quarterly rentals under this contract, she was firmly bound by the option during the term for which she had accepted the rent, and there is no conflict between our holding and the notation made by the Supreme Court, quoted above. Bookout, J., in Southern Oil Co. v. Colquitt, 28 Tex. Civ. App. 292, 69 S. W. 169, declared a contract which permitted the oil company to remove its machinery at any time, and abandon the contract, void.

We are aware of the fact that there is a variety of opinion upon the validity of a contract of this character, but we think the great weight of authority sustains us in holding that when the lessee has the option at any time of refusing to comply with the contract and surrendering the lease, without exploring and developing the land, the contract is unilateral, and may be avoided at the option of the lessor, and we do not construe the note made by the Supreme Court in the Staley-Witherspoon Case as intimating a contrary holding.

The Circuit Court of Appeals, in Smith v. Guffey, 202 Fed. 109, 120 C. C. A. 439, said:

"A nominal consideration is sufficient at law; equity requires a substantial consideration. In both cases the purpose of the grant is to secure for the lessor not the $1, but the oil and gas. In both the lessor covenants to pay over a percentage of any oil produced and to make substantial annual payments for any gas marketed. As a consideration, however, for the right to enter and prospect until oil or gas shall be found, the Indiana lessee has paid only the nominal sum of $1. He has not entered into

any covenants as an additional consideration for this right. True, he may lose his rights unless he performs the condition of digging a well or of making specified monthly payments; but the lessor cannot compel him by suit either to make the payments or to dig a well. The option is with the lessee. This results, moreover not only from his failure to make any such promise, and from the substitution of a condition for a covenant, but also from the express provision whereby the lessee could annul the contract at any time. * * * Is this obligation of these Illinois lessees, however, really, or only apparently, enforceable? The surrender clause gives them the right at any time, before or after the expiration of the nine months, to absolve themselves from any further liability. If they exercise this right, if they surrender the lease, as, at their absolute option, they are empowered to do, they are thereafter just as free from any obligation enforceable by the lessor as is the Indiana lessee. True, they must pay $1, and perhaps make an actual surrender, but this purely nominal obligation cannot change the rights of the parties in a court of equity. * * * That the complainants, long after defendants had discovered oil and gas on the premises—in fact, after the testimony in the case had been taken—filed a so-called stipulation waiving this right to surrender, a right no longer of the slightest value, cannot retroactively perfect the lease or bill of complaint."

In Long v. Sun Co., 132 La. 601, 61 South. 684, we find this expression of the Supreme Court of Louisiana:

"The defendant, at its will and pleasure, can withdraw at the end of 12 months, but the plaintiff is sent to the Greek Kalendar before it is possible for her to assert the rights of terminating the lease. Plaintiff is placed at a great disadvantage. She loses the royalty of one-eighth of the oil, besides her land remains unexplored. The royalty, as we take it, was the chief object for executing the lease. After a year it remained to defendant alone to determine whether it would continue with the lease, and the length of time it would choose to let everything remain in abeyance. There was not sufficient consideration. Mineral drilling contracts, optional as to one of the parties are optional as to the other. The defendant, by retaining options without consideration, left the plaintiff with the right of also asserting the termination of the contract. The contract was terminated by plaintiff by her refusal to accept from defendant the sum tendered, as there was not a mutuality of obligation. The defendant could say at the end of the year, or at any time thereafter, 'I shall "do" as I please,' but to the plaintiff he can say, 'Continue bound for years,' provided, however, she gave notice of not less than 3 years, which was to be followed by another delay of 3 years. This is waiting almost an interminable time. Payment of the $1 to cancel the lease is insignificant. It is true that in the contract it is stated that the payment is a valuable consideration, and to be held and deemed as such. This is a mere expression, and adds nothing to the want of consideration. Such a want cannot be supplied by mere declaration. We think that the contract contains a potestative condition; that one cannot retain absolute control, as the defendant attempted to do, without being subject to the possibility of meeting with the objection that the contract is potestative. It was a matter of will with the agents and officers of the defendants. On the other hand, the plaintiff remained bound. She has no right to anything save the paltry amount before mentioned. She has to wait years and sit idly by and possibly lose thousands of dollars. As to plaintiff and his interests, it was virtually an impossibility to annul the contract. We

insert the following paragraph of the contract, which shows that the condition was potestative: 'Eighth. For and in consideration of the obligations entered into by the defendant and the payment of said one dollar the option is granted to defendant to cancel the lease at any time after the expiration of twelve months by giving notice to plaintiff, and the party of the first part agrees that this one dollar is a valuable consideration deemed sufficient for the options, rights and privileges granted and to be so construed.' The construction contended for cannot be given; for the amount for terminating it as thus declared is too insignificant."

In the contract under consideration the Sun Company bound itself to pay Mrs. Long a royalty of one-eighth of all the oil produced, and never attempted to drill at any time. The contract also provided for the payment of ten cents per acre rent, quarterly. The judgment for Mrs. Long declaring the contract a nullity was affirmed. Caddo Oil & Mining Co. v. Producers' Oil Co. (La.) 64 South. 684.

The notation made by the Supreme Court in refusing the writ of error in the Staley v. Witherspoon Case, above, expresses some doubt as to the unilateral character of the contract. A comparison of the contract in that case, as set out in the opinion of the Court of Appeals, 138 S. W., 1191, with the contract in the Carpenter Case, supra, shows that they are similar in that in neither lease is there contained a specific provision whereby the lessee would be justified in surrendering the lease at its option, and we think this accounts for the Supreme Court's memorandum.

After a review of all the authorities obtainable, and especially the later cases bearing upon this question, we are convinced that we have properly disposed of the matter, and the motion for rehearing is overruled.