GRIFFIN et al. v. BELL et al.    (No. 1885.)

(Court of Civil Appeals of Texas. Texarkana. Feb. 20, 1918. On Motion for Rehearing, March 7, 1918.)

1. CONTRACTS ⬤➡91 — OPTION — CONSIDERATION.

Seventy dollars cash actually paid for an option to explore and develop oil lands was sufficient to make the issue of valuable and adequate consideration one of fact to be passed on by the court or the jury.

2. APPEAL AND ERROR ⬤➡909(1)—PRESUMPTIONS—DECISION OF ISSUES.

The Court of Civil Appeals must presume that the trial court decided all controverted issues of fact not submitted to the jury in harmony with the judgment rendered.

3. CONTRACTS ⬤➡59 — OPTION OR PRIVILEGE —CASH CONSIDERATION—LACK OF MUTUALITY.

Where the $70 cash paid by defendants to plaintiffs, was a valuable and adequate consideration for an option or exclusive privilege to explore and develop the mineral resources of plaintiffs' oil land which plaintiffs gave to defendants, though defendants did not bind themselves to exercise their option or privilege, or to do anything toward development of the mineral resources of the land, the contract was not subject to cancellation on account of its unilateral character on its face, imposing an obligation only on plaintiffs, since mutual promises are necessary only when there is no other consideration.

4. MINES AND MINERALS ⬤➡75—OPTION TO DEVELOP MINERAL LANDS—CONSIDERATION.

The $70 cash paid by defendants was not only the consideration for the privilege extending over the first term of six months, but for all the rights and privileges, conditional or unconditional, which the contract conferred, including the conditional right of claiming an extension of the option; payment of the $70 being what induced the execution of the contract, and being the consideration for all the rights and privileges therein granted.

5. CONTRACTS ⬤➡143—CONSTRUCTION.

In construing a contract, it must be viewed in its entirety.

6. MINES AND MINERALS ☞59—OPTION TO DEVELOP OIL LAND—LACK OF INTENTION TO DRILL.

Where defendants acquired from plaintiffs for cash an option to develop plaintiffs' land for oil with a view to sell the privilege at a profit, not binding themselves to sink wells, violating no agreement by failing to do so, the fact that they acquired the option without intention to drill is no ground for cancellation at plaintiffs' suit.

7. MINES AND MINERALS ☞59—OIL OPTION OR LEASE—FAILURE OF WIFE TO SIGN.

Where the wife of a joint owner of land having a homestead right failed to sign lease or option to develop the land for oil, her failure could only be invoked to limit the rights the lessees or optionees might claim, not as ground for cancellation at suit of the lessors.

*On Motion for Rehearing.*

8. CONTRACTS ☞53 — CONSIDERATION—ADEQUACY.

Where the consideration is sufficient to be denominated valuable, courts do not concern themselves with the relative value of the properties exchanged, a rule subject to some exceptions, as where the consideration is so grossly out of proportion to the property conveyed as to shock the conscience, or bear evidence of fraud on its face.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Suit by Nancy Griffin and others against J. A. Bell and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Young & Young, of Marshall, for appellants. W. G. Banks, of Carthage, Geo. L. Huffman, of Marshall, and J. G. Woolworth and J. R. Duran, both of Carthage, for appellees.

HODGES, J. The appellants Nancy Griffin and her children own a tract of about 250 acres of land situated in Panola county. The property belonged to the community estate of Nancy Griffin and her deceased husband, and at the time of the transactions hereinafter described was occupied by her as her homestead. Her children also resided on and used portions of the land. In March, 1916, Nancy Griffin, joined by one of her sons, executed an oil lease conveying certain mineral rights to J. A. Bell and J. P. Evans. Some time later it was discovered that this lease had not been signed by all of the Griffin heirs, and on July 1, 1916, what is referred to as a "corrected lease" was signed and acknowledged by all of the interested parties, except the wife of one of the Griffin sons. This instrument recites that it was executed in lieu of the first lease and for the purpose of ratifying and confirming that instrument. The material portions of this second instrument are as follows:

"The State of Texas, County of Panola.

"Know all men by these presents: That we, * * * hereinafter styled lessors of the county of Panola and state of Texas, have and by these presents do hereby demise, let, and lease unto J. A. Bell and J. P. Evans, their successors and assigns, the tract of land hereinafter described, for the purpose of exploiting the same for and the production of minerals therefrom, and to that end also grant the exclusive right of drilling and operating thereon for oil or gas and other minerals, together with a right of way for and a right to lay pipe lines to convey water, oils, steam, and gas, and the right to have and use sufficient water, oils, gas, and coal from the premises to drill and operate any wells that they may bore or shaft they may excavate, or in the treating so as to make merchantable any of such minerals, and also such other privileges as are reasonably requisite for the conduct of said operations and the right to remove at any time, from said premises, any and all property which may have been placed thereon by the said J. A. Bell and J. P. Evans.

"The said premises to which this instrument does apply are: * * * To have and to hold unto the said J. A. Bell and J. P. Evans, their successors and assigns, for the term and under the provisions as follows, to wit:

"First. There is expressly granted to the said J. A. Bell and J. P. Evans the right at any time before the expiration of six months from this date to begin operations for the drilling of a well for oil or gas on said premises, and also the right to extensions of time in which to begin such operations for the successive periods of six (6) months, on condition that the said J. A. Bell and J. P. Evans shall, on or before the first day of each such respective six months' period, pay to the lessors or deposit to the credit of the lessors in the Commercial National Bank of Shreveport, La., the sum of one hundred twenty-five and forty one-hundredths ($125.40) dollars, provided that if payment shall not be made on or before the first day of each such respective six months' period, then on such default. this lease shall wholly determine; provided further that these successive periods in which the right may be acquired to begin operations of drilling a well in search of oil or gas shall not exceed in the aggregate five (5) years from this date, and if such operations shall not be begun on or before the expiration of said five (5) years from this date, then this lease shall wholly determine.

"Second. If the said J. A. Bell and J. P. Evans shall avail itself of the right herein granted, and begin operations of drilling a well on said premises, then from and after the beginning of such operations, the said J. A. Bell and J. P. Evans shall not be required to make any further money payments hereunder. If the said J. A. Bell and J. P. Evans shall begin such operations of drilling a well it obligates itself to prosecute such operation with reasonable diligence. If the said J. A. Bell and J. P. Evans shall begin such operations of drilling a well within the fixed twelve months' period from this date, or within any extension period for which it may have paid as above provided the said J. A. Bell and J. P. Evans shall have the right to make as many attempts to find oil or gas as it pleases, and to continue the exercise of such right as long as it pleases, even beyond said term of five years from this date; provided only, such attempts shall be successive in the sense that until oil or gas be found not more than sixty days shall elapse between the cessation or abandonment of work on one well and the beginning of work on another.

"Third. If in the exercise of the right hereby conferred oil or gas be found in paying quantities on said land, then the said J. A. Bell and J. P. Evans shall deliver as royalty to said lessors free of all expense, one-eighth (⅛) part of all oil saved from that produced, such delivery to be made either in tanks with connections by lessors provided, or into any pipe-line that may be connected with the well, and if any well on said premises produces gas in paying quantities, and such gas is used or mar-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

keted off the premises by the said J. A. Bell and J. P. Evans, then the said lessors shall be paid at the rate of $250.00 per year for each and every such well, such payments to be made at the end of each such year.

"Fifth. It is expressly declared that if oil, gas, or other minerals, or any of them, be found in paying quantities then the said J. A. Bell and J. P. Evans shall become at once vested with the exclusive right to mine for and produce same, and any one or more or all of same, as long as any one of said minerals can be produced in paying quantities.

"Seventh. It is further provided that if oil or gas or other minerals in paying quantities shall be found and the said J. A. Bell and J. P. Evans, its successors or assigns hereunder, shall conclude that it or they do not desire to operate longer under this lease, then the right is conferred to surrender the same upon payment of one hundred ($100.00) dollars to the lessors and such right of surrender shall also confer the privilege of removing from said premises any and all material placed thereon by the said J. A. Bell and J. P. Evans, its successors and assigns.

"Ninth. It is further agreed that all the conditions and terms hereof shall extend to the heirs, executors and legal representatives, successors and assigns of the parties hereto. The said J. A. Bell and J. P. Evans has this day paid to the said lessors the sum of ($1.00) one dollar, the receipt whereof is hereby acknowledged and other valuable considerations and which payment is received in full satisfaction of any and every right and privilege granted hereby, including the right to extend the period for the exploration of said land."

In December, 1916, Nancy Griffin and her children brought this suit against Bell and Evans and other interested parties for the cancellation of those leases. In an amended original petition filed in March of the following year the plaintiffs set forth as grounds for cancellation that the execution of the lease by them was procured by fraud and was without consideration; that the lessees Bell and Evans secured the rights therein granted purely for speculative purposes and with no intention of attempting the development of the mineral resources in their land. They further alleged that the lease upon its face does not bind the lessees to the performance of any obligation or service, and is for that reason unilateral and not binding upon the lessors. The Atlas Oil Company, the Humble Oil Company, and the Palmetto Oil Company were joined as parties defendant upon averments that they had acquired by assignment through quitclaim conveyances all rights claimed by Bell and Evans under the terms of the lease. Bell, Evans, and their associates filed an answer in which they pleaded to the jurisdiction of the court, excepted to different parts of the plaintiffs' original petition, and finally disclaimed any interest in the subject-matter of the suit. Each of the oil companies above mentioned, claiming a separate right to a specific part of the land, answered by appropriate pleas and specially averred that the plaintiffs received a cash consideration of $70 at the time the lease was executed. It was also alleged by them that the sum of $125.40 provided for as the consideration for a six months' extension

of the lease had been paid into the Commercial National Bank of Shreveport, La., and there placed to the credit of the lessors. The appellants by a supplemental petition specially denied the payment of the cash consideration of $70, but offered, in the event the court found that such consideration had been paid, to return the same as a condition for the cancellation of the contract. The case was submitted to the jury on special issues, and upon the answers returned the court entered a judgment for the defendants below.

[1-3] The objection which should logically first claim attention is that which denies the mutuality of the lease contract. A careful analysis of that contract, or lease, as it is called, failed to disclose any unconditional obligation assumed by the lessees. It is not in fact a lease of land or of minerals, but a contract for the sale and purchase of an option or exclusive privilege of exploring and developing the mineral resources of the appellants' land. But the lessees do not therein bind themselves to exercise that option or privilege, or to do anything toward the development of those resources. If an obligation to that effect is essential to furnish a proper consideration, then this agreement is without any. But mutual promises are necessary only when there is no other consideration to sustain the contract. Landowners have the right to convey such options or privileges upon terms that suit them, and for any length of time they deem proper. Such conveyances when based upon an independent consideration are not void because of the absence of reciprocal obligations on the part of the grantee. National Oil & Pipe Line Co. v. Teel, 95 Tex. 591, 68 S. W. 979.

Several of the appellants who testified upon the trial admitted that all of them had received $70 in cash as part, at least, of the consideration for the execution by them of this contract. It is true they also testified that this sum was presented to them as a gratuity by a representative of one of the appellees. But the jury found that it was not a gratuity. Appellants also testified that another representative of one of the appellees promised as a further consideration for their signatures to the contract that his company would begin sinking a well on appellants' land within 30 days. It appears, however, that this promise was reduced to writing, and when offered in evidence showed that it was conditional. The sinking of the well was to be commenced within that time in the event another well then being sunk by the Palmetto Oil Company on an adjacent tract of land proved to be what they called a 50-barrel well. The jury found that this well did not prove to be a 50-barrel well. The only basis then left for an independent consideration to support this contract is the cash payment of $70. It is contended by the appellants that this sum is inadequate, and amounts to no more than a nominal consid-

eration. In determining whether a consideration is sufficient in amount to be classed as adequate and valuable we must look to the subject-matter of the contract and its value to the parties concerned. The value of an exclusive option to explore for and mine oil and gas is governed largely by the prospects of their discovery in the given territory and their worth when discovered. It is easy to imagine territory in which this privilege would be worth much, and other territory in which it would have no practical value. We regard the sum of $70 cash actually paid as a sum sufficient to make the issue of valuable and adequate consideration in this case one of fact to be passed upon by the court or the jury. That issue was not submitted to the jury, nor was its submission requested. While the court did not make any specific findings, we must presume that he decided all controverted issues of fact not submitted to the jury in harmony with the judgment rendered. If this be true, then the court must have found, under the facts of this case, that $70 was a valuable and adequate consideration for the option granted. It follows, then, that the unilateral character of the contract upon its face furnishes no ground for its cancellation.

[4, 5] But it may be contended, as in the case of Owens v. Corsicana Petroleum Co., 169 S. W. 192, cited by the appellants, that the $70 formed the consideration for the privilege extending over the first period of six months, and was exhausted by the expiration of that term. The contract stipulates that unless the lessees began drilling a well within six months from its date their lease should expire, but it also gave the lessees the right of having successive extensions upon the payment of stipulated sums of money. We must view the contract in its entirety. The $70 paid in advance was not only the consideration for the privilege extending over the first term of six months, but for all the rights and privileges, conditional and unconditional, which the contract conferred, including the conditional right of claiming an extension of their option. The payment of that sum was what induced the execution of the contract, and was the consideration for all the rights and privileges therein granted. It is therefore not correct to say that this sum should be treated as a payment of the rental for the first term of six months. When that term expired the lessees could have demanded an extension of time upon a tender of the sum agreed upon. This was a valuable right which emanated from the contract, and for the grant of which the $70 was the consideration.

In response to special issues the jury found that Bell and Evans, the original lessees, acquired the lease for speculative purposes, and that they had no intention of drilling a well on the land of the appellants. It is contended by counsel for appellants that those facts required the entry of a judgment for the cancellation of the lease. They refer to numerous authorities which hold that where it can be shown that the lessees acquired similar rights for such purposes the absence of an intention to develop the land amounted to such a fraud that the lessors would be entitled to a rescission of the contract. It will be found, however, upon examination, that those authorities involve the interpretation of contracts in which the lessees had obligated themselves to develop the territory covered by their contract.

[6] The state of the evidence in this case was such as to sustain a finding that the contract was executed under circumstances free from fraud, and that all the parties signed it with a fair understanding of its provisions. It gave the lessees the liberty of assigning their rights to third parties. The fact that they acquired the option granted, with no intention of themselves drilling for minerals, but with a view of selling that privilege at a profit, is no ground for cancellation. They had not bound themselves to sink wells, and they violated no agreement by a failure to do so. Whatever rights the original lessees held under this contract passed to their assignees, the oil companies hereinbefore mentioned, who were made parties defendant.

[7] What has been said we think disposes of all the errors assigned except those which challenge the validity of the lease because of the failure of the wife of one of the joint owners of the property to sign the lease. It is contended that she had a homestead right in the property which could not be divested without her consent. That may be true; but it does not furnish any reason for canceling a contract which the remaining parties had a right to execute. At most her failure to sign it could only be invoked for the purpose of limiting the rights which the lessees might claim.

The judgment of the district court will therefore be affirmed.

### On Motion for Rehearing.

[8] Lest some misunderstanding should arise from the language employed relative to the matter of determining the adequacy and character of the consideration upon which this lease is founded, we think it proper to modify some of the expressions used in the original opinion. We do not mean to hold that the consideration must be both valuable and adequate, or that its sufficiency should be measured by the relative value of the property conveyed; nor do we mean to hold that in every case the character and the sufficiency of the consideration should be treated as questions of fact to be passed upon by the jury. We recognize and adhere to the general rule that where the consideration is sufficient to be denominated "valuable" the courts do not concern themselves with the relative value of the properties exchanged. 1 Elliott on Con-

tracts, §§ 209 and 210. This rule, however, is subject to some exceptions, as where the consideration is so grossly out of proportion to the property conveyed as to shock the conscience or to bear upon its face evidences of fraud. 2 Pomeroy, § 948. In saying that we regard the sum of $70 cash as sufficient to make the issue of valuable and adequate consideration one of fact to be passed upon by the jury, we were perhaps more liberal than necessary. That liberality, however, was indulged in because the record showed that in this case either the court or the jury had determined those questions in favor of the appellees. Had the question arisen in a different form, and no issue of fact been determined, we might have treated the matter in a different manner.

The motion for a rehearing is overruled.